UNITED STATES of America, Appellee,

v.

Majid MODARRESSI,
Defendant, Appellant.

No. 89–1027.

United States Court of Appeals,
First Circuit.

Heard June 9, 1989.

Decided Sept. 28, 1989.

---

5. *See* part IV *supra.*

6. We decline to impose sanctions, as requested by Hugel, against the McNells and their attorneys.

See also 690 F.Supp. 87.

Owen S. Walker, Federal Defender Office, with whom Robert D. Richman, Boston, Mass., was on brief, for defendant, appellant.

Richard G. Stearns, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for the U.S.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and CAFFREY,* Senior District Judge.

TORRUELLA, Circuit Judge.

Majid Modarressi appeals from his conviction on two counts of violating the Arms Export Control Act, 22 U.S.C. § 2778. Count One charged Majid and his father Ahmed with conspiring to export certain defense articles without first obtaining the necessary license from the Office of Munitions Control, in violation of 18 U.S.C. § 371. Count Two charged both of the defendants with exporting defense articles without registering with the Office of Munitions Control, in violation of 22 U.S.C. § 2778(b)(1)(A). The items in question included microwave devices called klystron

and twystron tubes, allegedly components of the radar used in the Hawk missile system and another long-range surveillance radar system.

This case began when Modarressi contacted the Raytheon Corporation about the possible purchase of the klystron and twystron tubes. Raytheon notified the United States Customs Service, which assigned an undercover agent, Steven Crogan, to the case. Over the course of the next three months, Crogan and Modarressi participated in approximately seventy five telephone conversations, all of which Crogan recorded.

Modarressi told Crogan that he was calling on behalf of his father, an Iranian businessman, who wanted to import these items, as well as other military equipment, to Iran for use by its military. Crogan arranged to conduct three three-way telephone calls with Modarressi and his father. Crogan and Modarressi's father could not speak directly because his father spoke only Farsi and Crogan spoke only English. Thus, Modarressi acted as an interpreter during these three conversations in which they all participated. When the tapes of these conversations were later transcribed, the Farsi sections were translated into English. The transcript of the conversations indicates that Modarressi translated most of the statements made by his father.

Modarressi and his father came to Boston to meet with Crogan and, after a series of meetings, they were arrested. At their trial, the recordings of all of the conversations, including the Farsi translations, were admitted into evidence. Modarressi appeals from his conviction because he claims that the transcribed Farsi communications should not have been admitted. He argues that this evidence violated his fourth amendment rights, as well as the federal eavesdropping control law, 18 U.S.C. §§ 2510–2521.

After a careful examination of the record, we conclude that we need not address Modarressi's fourth amendment claim, because even if we accepted his argument.

* Of the District of Massachusetts, sitting by designation.

gument, the admission of this evidence was harmless error. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Modarressi disagrees with the admission of the official translations of his father's statements that were made in Farsi, claiming that this was a constitutional violation necessitating his conviction's reversal. The Supreme Court has made clear, however, that even constitutional errors can be considered "harmless," although the standards will be more exacting than when examining other less serious errors made at trial. *Id.* at 22, 87 S.Ct. at 827. Thus, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828; *accord Harrington v. California*, 395 U.S. 250, 251–52, 89 S.Ct. 1726, 1727, 23 L.Ed.2d 284 (1969).

An examination of the record indicates that even had there been a fourth amendment violation in this case,[1] the error was harmless beyond a reasonable doubt. The disputed evidence provided almost no information that had not been available already in English due to Modarressi's own translations on Crogan's behalf. This conclusion is clear from the purpose of Modarressi's participation in the calls—to act as an interpreter and ensure that Crogan would be informed of everything that was said. Thus, almost all of the relevant statements were interpreted by appellant himself.

In fact, there seems to be only one point in the transcript of these tapes in which Modarressi's father asked his son not to relay to Crogan what he had said. Specifically, Modarressi's father stated "I was the one who told them to open this line of credit for me and they have never done this before. You don't have to mention this now, but when I come there we will talk about this subject and we will talk about it later on." These comments concerned background information about people that

Modarressi's father was working with in Iran. This statement is not in any way inculpatory, particularly in light of the overwhelming evidence properly admitted against appellant.

There were no significant variations between what he had stated during the conversations in English and the official translations. The evidence to which Modarressi objects was cumulative of testimony properly admitted. The case against appellant was overwhelming and nothing new was introduced via the translated conversations. Therefore, the admission of this evidence was harmless beyond a reasonable doubt.

*Affirmed.*

---

1. Considering the outcome of this case, we express no opinion as to whether the admission of

these translations was appropriate.