**UNITED STATES of America, Plaintiff,**

v.

**John DOE also known as Geronimo Pizarro–Calderon, Defendant.**

**Crim. No. 93–0018CCC.**

United States District Court,
D. Puerto Rico.

July 7, 1993.

Charles E. Fitzwilliam, Acting U.S. Atty. by Jorge E. Vega–Pacheco, Asst. U.S. Atty., Hato Rey, PR, for plaintiff.

Rafael Castro–Lang, San Juan, PR, for defendant.

## ORDER

CEREZO, District Judge.

The Court has before it a Report and Recommendation filed by U.S. Magistrate Jesús A. Castellanos on April 27, 1993 (**docket entry 24**), in which he recommends that the motion to suppress filed by defendant on March 18, 1993 (**docket entry 14**) be denied. Defendant has objected to the Magistrate's recommendation (**docket entry 26**), and the government has filed a motion in support of the same (**docket entry 34**). Having considered the report and recommendation, the parties' motion, the transcript of the suppression hearing and the pertinent case law, we ADOPT the Magistrate's recommendation and now DENY the motion to suppress.

We begin by reciting the relevant facts elicited by the Magistrate in the hearing on the motion and aptly summarized at pages 2–4 of his report and recommendation:

> Airport Security Officer Gladys Martínez testified she works at the Isla Verde Airport to check all passengers going through security point to detect knives and firearms with the use of X-ray machines, hand scanners and metal detectors. While Ms.

Martínez was on duty at the entrance security check point to gates 31–42 on January 8, 1993, she noticed on the monitor a small carry-on suitcase or bag showing something strange inside, that is, it looked dark on the screen and she was unable to identify what it was. She waited for the owner to pass the walk-through and asked him if it was his luggage. Once he replied in the affirmative she asked what he was carrying inside and he said they were gifts boxes with figurines. Since that was not what it appeared on the screen, subsequently explaining that if a figurine the shape would be fully reflected, the passenger was asked to open the suitcase to which he sort of hesitated. A fellow worker from U.S. Department of Agriculture, José Mercado, was next to her and she proceeded to call Police Officer Avilés who was on duty at the area. Mr. Mercado told the passenger with a harder voice to open the suitcase for inspection. The gentleman placed the burgundy color bag on top of the table. When he opened same the witness saw there was a box with gift wrapping and inside some "Depends" kind of napkins, then a navy blue paper and then some blocks wrapped with beige and brown tape. At that time Officer Avilés, who was standing next to him, detained the passenger.

On cross-examination, Ms. Martínez indicated there are three different security check points towards the gate entrance areas of the airport. The scanners are used as small metal detector devices when there is a need to pass them closer to the skin of the passengers who enter the gate area for boarding and are not used for carry-on luggage which is passed through X-ray machines. The latter do not entail metal detectors. The witness denied she is looking for narcotics when X-rays are performed since this is a work for Customs. There is a state policeman at the security points upon instructions from the Head of Airport Facilities and no luggage or flights are processed unless one officer is present. She had never been asked by state or federal law enforcement nor have received training to look out for narcotics. Neither is she granted any benefit by her employer when narcotics are found, although she has been congratulated when it happens. Although the passengers are not informed that if they do not agree to the search same could be avoided by not boarding the plane, the passenger never refused to open his suitcase when so asked. There are also written notices, both in Spanish and English, apprising passengers that they would be searched for weapons.

Ms. Martínez identified Joint Exhibit 1 as the photos depicting the packages inside the suitcase at the time the passenger was detained. That day there were two passengers at the same time with different bags but the same content. She was later asked to appear at the station house downstairs to provide a report for the Drug Enforcement Administration.

This witness also testified she has been trained to identify the content of luggage; silhouettes, basically for weapons and explosives identification. When an object appears dark, dense, that cannot be reflected on the screen, there could be a firearm or explosive behind and passengers are asked to open and display same for having created doubts on her mind as to the content.

. . . .

Puerto Rico Police Officer Juan Antonio Avilés testified he was at the inspection point for gates 31–42 on January 8, 1993, and was called upon by Ms. Gladys Martínez for having seen on the X-ray machine some object which content she needed to check. When approaching them a small burgundy suitcase had already gone through the X-rays.

Mr. José Mercado was together with Ms. Gladys Martínez and since the Department of Agriculture had also to verify that no agricultural products go through which are prohibited from entering the United States he asked the passenger what was he carrying, to which he answered figurines. The passenger was opening the bag slowly and had to be asked to show it better, he was turning around and again opening little by little, until it could be seen better and sort of six kilos packages were observed by Police Officer Avilés. Joint Exhibit 2. At that time, having reasonable grounds to

believe an offense had been committed, the passenger was placed under arrest, handcuffed, warned as to his rights, and taken downstairs to the Police Station. He was placed in a cell and the Drug Enforcement Administration was notified upon which Agent Iván Ríos Collazo and two other agents were sent. They performed a field test that gave positive for cocaine substance.

■ In his motion, defendant essentially advances two arguments, which we address in turn. He contends that inasmuch as the search of his carry-on luggage at the airport security checkpoint exceeded the legitimate scope of a search for weapons authorized by the applicable regulations, it was an unreasonable search whose fruits must be suppressed pursuant to the provisions of the Fourth Amendment. Specifically, he claims that the airport security search to which he was submitted was subverted into a general search for evidence of crime, as evidenced by the presence of a Commonwealth police officer at the site, and the subsequent hand search to which his luggage was subjected after it had been scanned by the X-ray machine. In view of the particular circumstances present in this case such an argument cannot stand. It must be noted that the subsequent visual inspection and hand search of defendant's luggage was conducted only after the initial X-ray scan proved to be inconclusive for the presence of weapons or explosives, and, as such, was permitted as part of the administrative search. *United States v. Pulido–Baquerizo,* 800 F.2d 899, 902 (9th Cir.1986), *United States v. Herzbrun,* 723 F.2d 773, 776 (11th Cir.1984), *United States v. Wehrli,* 637 F.2d 408, 409–10 (5th Cir.1981). Moreover, the evidence on record clearly shows that the search was conducted by a security agent of the airport, and that the local police officer was summoned to the site of the search only after the initial X-ray scan did not rule out the presence of either weapons or explosives in defendant's luggage, requiring the presence of additional security. Thus, the administrative search conducted in this case complied with the standards of reasonableness of the Fourth Amendment.

■ Relying on *United States v. Davis,* 482 F.2d 893 (1973), defendant further alleges that he should have been informed of his right to avoid the hand-search of his bag by electing not to board the aircraft. The problem with defendant's argument is that in the particular circumstances of this case he had no such right. To be fair, in *Davis* the Court of Appeals for the Ninth Circuit indeed required that potential passengers be allowed to avoid the airport searches by electing not to fly. However, *Davis* never determined at what point in the boarding process a passenger might decide not to fly. The matter was clarified more than a decade later in *Pulido–Baquerizo,* where the Court stated:

> The requirement in *Davis* of allowing passengers to avoid the search by electing not to fly does not extend to a passenger who has already submitted his luggage for an x-ray scan. *Davis* requires notice, not actual knowledge, of the need to submit luggage for inspection. It was met here by evidence showing signs at the airport [that] advised passengers of the luggage inspection.... [I]f a potential passenger chooses to avoid a search, he must elect not to fly before placing his baggage on the x-ray machine's conveyor belt.

*United States v. Pulido–Baquerizo,* 800 F.2d at 902 (citations omitted).

Inasmuch as in the case at bar defendant opted to submit his luggage to the x-ray inspection notwithstanding the warning signs posted at the airport, he implicitly waived his right of electing not to fly in order to avoid the search. Accordingly, the airport security agents were not required to advise him that he had such an option once they determined that a visual inspection and hand search of his luggage was necessary.

■ Defendant raises as a second argument that his arrest by a Commonwealth police officer lacked probable cause and as a consequence the subsequent search of his luggage was unreasonable under the Fourteenth Amendment. It is evident, however, that probable cause to arrest was obtained by the police officer immediately after he observed the blocks wrapped in brown paper that were located in defendant's luggage, which, to any seasoned law enforcement offi-

cer, were obviously indicative of the presence of contraband. The seizure of the cocaine which followed was clearly justified under the plain view doctrine. *See Coolidge v. New Hampshire,* 403 U.S. 443, 464–72, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971) (plurality opinion of Stewart, J.); *Texas v. Brown,* 460 U.S. 730, 737, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983) (plurality opinion of Rehnquist, Judge).

■ Defendant further contends that the police officer should have obtained a warrant prior to conducting what he alleges was another search of his luggage at the airport police station. The evidence on record shows that what took place at the station was not a search *per se,* as this had already taken place at the security checkpoint, but a more thorough examination of the objects which had already been lawfully seized. Under these circumstances, the police officer was not required to obtain a warrant.

We need go no further. As the search of defendant's luggage was conducted in accordance with the requirements of reasonableness of the Fourth Amendment, we find no merit in his claims to the contrary. Accordingly, the Magistrate's Report and Recommendation is hereby APPROVED and ADOPTED, and the motion to suppress filed by defendant is DENIED.

SO ORDERED.

## REPORT AND RECOMMENDATION

CASTELLANOS, United States Magistrate Judge.

A motion to suppress was filed on grounds that while attempting to board a domestic flight at the Isla Verde International Airport on January 8, 1993, defendant was forced to open a hand-carried duffle bag by airline security personnel, and six kilos of cocaine were therein found. Defendant claims the search exceeded the legitimate scope for these type of administrative searches and screening of passengers, and as such infringes his Fourth Amendment rights to be free from unreasonable searches and seizures.

■ Searches of carry-on luggage or passengers by airlines is performed pursuant to the Federal Aviation Administration (FAA) guidelines geared mainly to deter hijackers and terrorists, as well as to detect weapons or explosives from coming on board flights. 14 C.F.R. § 107.3 and 108 (1987). For purposes of the Fourth Amendment this constitutes "state action" and as such is subject to illegal search and seizure scrutiny. *United States v. Davis,* 482 F.2d 893, 904 (9th Cir. 1973). Still, Air Transportation Security Act of 1974 allows administrative search exception to warrant requirements. Pub.L. No. 93–366, Title II, 88 Stat. 415 (codified 49 U.S.C.App. § 1511 et seq.).

Within the framework of above guidelines, this magistrate examines the facts established at the hearing of April 22, 1993.

Airport Security Officer Gladys Martínez testified she works at the Isla Verde Airport to check all passengers going through security point to detect knives and firearms with the use of X-ray machines, hand scanners and metal detectors. While Ms. Martínez was on duty at the entrance security check point to gates 31–42 on January 8, 1993, she noticed on the monitor a small carry-on suitcase or bag showing something strange inside, that is, it looked dark on the screen and she was unable to identify what it was. She waited for the owner to pass the walk-through and asked him if it was his luggage. Once he replied in the affirmative she asked what he was carrying inside and he said they were gifts boxes with figurines. Since that was not what it appeared on the screen, subsequently explaining that if a figurine the shape would be fully reflected, the passenger was asked to open the suitcase to which he sort of hesitated. A fellow worker from U.S. Department of Agriculture, José Mercado, was next to her and she proceeded to call Police Officer Avilés who was on duty at the area. Mr. Mercado told the passenger with a harder voice to open the suitcase for inspection. The gentleman placed the burgundy color bag on top of the table. When he opened same the witness saw there was a box with gift wrapping and inside some "Depends" kind of napkins, then a navy blue paper and then some blocks wrapped with

beige and brown tape. At that time Officer Avilés, who was standing next to him, detained the passenger.

On cross-examination, Ms. Martínez indicated there are three different security check points towards the gate entrance areas of the airport. The scanners are used as small metal detector devices when there is a need to pass them closer to the skin of the passengers who enter the gate area for boarding and are not used for carry-on luggage which is passed through X-ray machines. The latter do not entail metal detectors. The witness denied she is looking for narcotics when X-rays are performed since this is a work for Customs. There is a state policeman at the security points upon instructions from the Head of Airport Facilities and no luggage or flights are processed unless one officer is present. She has never been asked by state or federal law enforcement nor have received training to look out for narcotics. Neither is she granted any benefit by her employer when narcotics are found, although she has been congratulated when it happens. Although the passengers are not informed that if they do not agree to the search same could be avoided by not boarding the plane, the passenger never refused to open his suitcase when so asked. There are also written notices, both in Spanish and English, apprising passengers that they would be searched for weapons.

Ms. Martínez identified Joint Exhibit 1 as the photos depicting the packages inside the suitcase at the time the passenger was detained. That day there were two passengers at the same time with different bags but the same content. She was later asked to appear at the station house downstairs to provide a report for the Drug Enforcement Administration.

This witness also testified she has been trained to identify the content of luggage; silhouettes, basically for weapons and explosives identification. When an object appears dark, dense, that cannot be reflected on the screen, there could be a firearm or explosive behind and passengers are asked to open and display same for having created doubts on her mind as to the content.

Insofar as this Airport Security Officer her participation and pattern of conduct is attuned with the kind of administrative searches at the present widely known and accepted by all those boarding commercial flights.

The purpose of airport security searches is to detect skyjack weaponry and consent, express or implied, is present when inconclusive X-rays or hand search cannot establish the nature of the object arising suspicion of airport security personnel. *United States v. Herzbrun*, 723 F.2d 773 (11th Cir.1984); *United States v. Wehrli*, 637 F.2d 408 (5th Cir.1981); *United States v. DeAngelo*, 584 F.2d 46 (4th Cir.), cert. denied, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 493 (1978); *United States v. Homburg*, 546 F.2d 1350 (9th Cir. 1976); *United States v. Williams*, 516 F.2d 11 (2d Cir.1975). See also Lemmet, Michael G., *Implied Consent in Airport Searches: A Response to Terrorism*, 25 Am.Crim.L.Rev. 549 (1988); Wright, *Hijacking Risk and Airport Frisks: Reconciling Airline Security with the Fourth Amendment*, 9 Crim.L.Bull. 491, 499–500 (1973); Note, *The Constitutionality of Airport Searches*, 72 Mich.L.Rev. 128 (1973).

See *United States v. Pulido–Baquerizo*, 800 F.2d 899, 902 (9th Cir.1986) (if a potential passenger chooses to avoid a search, he must elect not to fly before placing his baggage on the X-ray machine's conveyor belt).

Puerto Rico Police Officer Juan Antonio Avilés testified he was at the inspection point for gates 31–42 on January 8, 1993, and was called upon by Ms. Gladys Martínez for having seen on the X-ray machine some object which content she needed to check. When approaching them a small burgundy suitcase had already gone through the X-rays.

Mr. José Mercado was together with Ms. Gladys Martinez and since the Department of Agriculture had also to verify that no agricultural products go through which are prohibited from entering the United States he asked the passenger what was he carrying, to which he answered figurines. The passenger was opening the bag slowly and had to be asked to show it better, he was turning around and again opening little by little, until it could be seen better and sort of

six kilos packages were observed by Police Officer Avilés. Joint Exhibit 2. At that time, having reasonable grounds to believe an offense had been committed, the passenger was placed under arrest, handcuffed, warned as to his rights, and taken downstairs to the Police Station. He was placed in a cell and the Drug Enforcement Administration was notified upon which Agent Iván Ríos Collazo and two other agents were sent. They performed a field test that gave positive for cocaine substance.

■ When airport security concerns are not implicated, "every passenger who has luggage checked with an airline enjoys a reasonable expectation of privacy that the content of that luggage will not be exposed in the absence of consent or a legally obtained warrant. *United States v. Goldstein,* 635 F.2d 356, 361 (5th Cir. Unit B 1981). See also *United States v. Lovell,* 849 F.2d 910 (5th Cir.1988). *United States v. Place,* 462 U.S. 696, 709, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983).

Defendant attempted to establish there is no good faith purpose for airport inspection which is confined to detection of weapons or explosives by indicating that Officer Avilés has intervened in four other cases in the last two months, as indicated by a transcript of his Grand Jury testimony.

■ If the airport detection system has been significantly "distorted" by the introduction of other objectives, the grounds for this kind of administrative searches require additional justification under a warrantless type of exception. *United States v. $124,570 U.S. Currency,* 873 F.2d 1240 (9th Cir.1989). The government cannot avoid the restrictions of the Fourth Amendment by notifying the public that all telephone lines would be tapped or that all homes would be searched. 4 W. LaFave, *Search and Seizure,* § 10.6 (2d ed. 1987).

■ The initial intervention with this passenger's suitcase was by a non-law enforcement personnel in the performance of an administrative type of search for purely security reasons. The Puerto Rico Police Officer initiated his participation once he observed the brick shape packages, in kilo forms,

which upon prior experience and acknowledged expertise provided sufficient grounds for detention of defendant in possession of these objects and was subsequently field tested for the presence of a controlled substance by DEA agents. The search herein conducted is a lawful one, of which passengers throughout the continent are aware. *United States v. Skipwith,* 482 F.2d 1272 (5th Cir.1973). Fourth amendment jurisprudence in the transportation context indicates there is a reduced expectation of privacy when traveling at the present through commercial transportation. *Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984).

Therefore, it is recommended that defendant's motion to suppress BE DENIED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this order. *United States v. Valencia,* 792 F.2d 4 (1st Cir.1990).

IT IS SO ORDERED.

San Juan, Puerto Rico, April 27, 1993.