**UNITED STATES of America, Appellee,**

v.

**John DOE, a/k/a Geronimo Pizarro–Calderon, Defendant, Appellant.**

No. 94–1096.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1995.

Decided Aug. 4, 1995.

Rafael D. Castro Lang, for appellant.

José A. Quiles–Espinosa, Sr. Litigation Counsel, with whom Guillermo Gil, U.S. Atty., and Ernesto Hernández–Milán, Asst. U.S. Atty., were on brief for appellee.

Before TORRUELLA, Chief Judge, ALDRICH, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Appellant Geronimo Pizarro–Calderon ("Pizarro") contends that the district court erred in refusing to suppress six block-like articles—packaged in opaque beige and brown tape—which ultimately led to his conviction for possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1993). We reverse.

## I

## BACKGROUND

The district court adopted the findings recommended by the magistrate judge who conducted the suppression hearing. On January 8, 1993, Security Officer Gladys Martinez del Valle ("Martinez") was screening passengers and monitoring their carry-on luggage for weapons and explosives at a security checkpoint in the Isla Verde Airport terminal. See 14 C.F.R. § 107.20 (1995) (Federal Aeronautics Administration ("FAA") regulation mandating screening requirements for carry-on luggage), § 107.21 (banning unauthorized possession of any "explosive, incendiary, or deadly or dangerous weapons" beyond airport checkpoints). Prominent signs forewarned passengers, in English and Spanish, that their persons and carry-on luggage were subject to screening and search for weapons and explosives. Security screeners normally use x-ray machines to scan all carry-on luggage; metal detectors and hand scanners to screen passengers.

While tending the x-ray monitor, Martinez noticed a carry-on bag containing an unidentifiable dark object. She had been trained to regard such dense, nonreflective objects as possible camouflage for weapons or explosives. Upon questioning by Martinez, appellant Pizarro stated that the carry-on bag belonged to him, and the nonreflective objects inside were gift boxes containing "figurines." Concerned that the figurines reflected no distinguishable silhouette on the x-ray monitor, Martinez asked Pizarro to open the carry-on bag. When Pizarro "sort of hesitated," United States Department of Agriculture Inspector José Mercado, working beside Martinez, directed Pizarro to open the carry-on bag, then summoned a local law enforcement officer, Juan Avilés, to the security checkpoint.[1]

Pizarro opened the carry-on bag in the presence of Martinez, Officer Avilés, and Inspector Mercado, revealing a box wrapped in Christmas paper. The box contained a layer of sanitary napkins, a layer of dark blue paper and, finally, six blocks wrapped in opaque beige and brown tape. A nineteen-year veteran of the Puerto Rico Police, Officer Avilés immediately suspected that the concealed blocks contained cocaine. Whereupon he seized the carry-on bag and its contents, then arrested and handcuffed Pizarro.[2]

After placing Pizarro in an airport police-station cell, Avilés contacted the United States Drug Enforcement Administration

1. Officer Avilés was employed by the airport administration to patrol the security checkpoint area and respond to incidents encountered by screeners and inspectors, in accordance with FAA regulations requiring the presence of a local law enforcement official. See 14 C.F.R. § 107.15.

2. At about the same time, Martinez noticed another nonreflective object on the x-ray monitor, similar to the one observed in Pizarro's carry-on bag. The passenger in line behind Pizarro—Ariel Figueroa–Cruz—claimed ownership of the second bag, which was found to contain two Christmas gift boxes similar to the one Pizarro had been carrying. Without opening the gift boxes, Officer Avilés placed Figueroa under arrest, and transported both suspects to the airport police station. See United States v. Figueroa–Cruz, 822 F.Supp. 853 (D.P.R.1993); infra note 9 and accompanying text.

("DEA"). Shortly thereafter, DEA agents tested the blocks by piercing their opaque wrappings; the contents tested positive for cocaine. In due course, Pizarro was indicted for possessing six kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).

Pizarro moved to suppress the test results and the cocaine, on the ground that the warrantless searches of the carry-on bag and the containers inside it (i.e., the Christmas box and the blocks enclosed in intact, opaque wrapping) violated the Fourth Amendment to the United States Constitution. The government successfully defended the challenged DEA testing as a mere continuation of the administrative search aimed at ensuring airline security. *See United States v. Pizarro–Calderon*, 829 F.Supp. 511, 515 (D.P.R.1993). Following a jury trial, Pizarro was convicted and sentenced.

## II

### *DISCUSSION*

■ The government must demonstrate that the warrantless DEA testing of the enclosed blocks either entailed no Fourth Amendment search or came within some recognized exception to the warrant requirement. *See, e.g., United States v. Doward*, 41 F.3d 789, 791 (1st Cir.1994).[3] The government contends that the carry-on bag initially was opened and searched at the airport security checkpoint pursuant to a lawful administrative search for weapons and explosives. *See, e.g., United States v. Skipwith*, 482 F.2d 1272, 1277–78 (5th Cir.1973) (holding that inadvertent discovery of evidence of criminal activity in course of lawful security search for weapons at airport checkpoint does not violate Fourth Amendment). Further, it argues, once Pizarro's carry-on bag and the Christmas gift box lawfully had been opened

for security purposes, it was proper to seize and open the packaged blocks thereby exposed to Avilés' "plain view." *See Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971).

Pizarro protests on both counts. First, he says, carry-on luggage screenings must be confined to ferreting out threats to airline security (i.e., weapons and explosives used in air piracy), whereas the customary presence of Officer Avilés at the security checkpoint permitted an inference that security concerns were a mere subterfuge for intercepting contraband posing no threat to airline security. Second, even assuming probable cause to seize the suspicious blocks, a search warrant was required before the intact, opaque packaging enclosing the blocks could be pierced to test for cocaine.

### A. *The Searches and Seizure at the Security Checkpoint* [4]

Pizarro argues that the warrantless search of the carry-on bag violated his Fourth Amendment rights, *ab initio*, since the customary presence of Avilés at the checkpoint subverted an otherwise lawful airline security screening into a warrantless general search for contraband (viz., cocaine) unrelated to airline security. The district court found that—

> the search was conducted by a security agent at the airport, and that the local police officer was summoned to the site of the search only *after* the initial X-ray scan did not rule out the presence of either weapons or explosives in defendant's luggage, requiring the presence of additional security.

*Pizarro–Calderon*, 829 F.Supp. at 514 (emphasis added).

■ Routine security searches at airport checkpoints pass constitutional muster

---

3. The Fourth Amendment is implicated even though airport security checkpoints are manned by nongovernmental personnel, since the FAA prescribes extensive administrative directives. *See United States v. Davis*, 482 F.2d 893, 896–97 (9th Cir.1973); *see also* Air Transportation Security Act of 1974, Pub.L. No. 93–366, 88 Stat. 415 (1974) (codified as amended at 49 U.S.C. §§ 1356, 1357, 1371, 1372, 1472, 1516); 14 C.F.R. § 108.9.

4. The factual findings underlying a suppression ruling are reviewed for clear error. *United States v. Lewis*, 40 F.3d 1325, 1332–33 (1st Cir. 1994). Related rulings of law, including the "reasonableness" of a particular warrantless search, are accorded plenary review. *Id.*

because the compelling public interest in curbing air piracy generally outweighs their limited intrusiveness. *See, e.g., United States v. Pulido–Baquerizo,* 800 F.2d 899, 902 (9th Cir.1986); *cf. United States v. Ferrer,* 999 F.2d 7, 9 (1st Cir.1993) (upholding warrantless search of checked luggage on alternate ground of "abandonment," but faulting government's "falling-domino approach, by which each intrusion diminishes privacy expectations enough to permit further infringements"). Consequently, *all* carry-on luggage can be subjected to initial x-ray screening for weapons and explosives without offending the Fourth Amendment. In the event the initial x-ray screening is inconclusive as to the presence of weapons or explosives, the luggage may be hand-searched as reasonably required to rule out their presence. *Pulido–Baquerizo,* 800 F.2d at 902.

■ Other contraband inadvertently discovered during a routine checkpoint search for weapons and explosives may be seized and introduced in evidence at trial even though unrelated to airline security. *See, e.g., Skipwith,* 482 F.2d at 1277–78. On the other hand, lawful airline security searches of carry-on luggage may not be enlarged or tailored systemically to detect contraband (*e.g.,* narcotics) unrelated to airline security. *See, e.g., United States v. $124,570 U.S. Currency,* 873 F.2d 1240, 1243–45 (9th Cir.1989) (upholding suppression of contraband unrelated to airline security where screeners were rewarded monetarily by law enforcement authorities for detecting such contraband in carry-on luggage).

As we conclude that the government failed to demonstrate that the *subsequent* warrantless search of the packaged blocks by the DEA satisfied the Fourth Amendment warrant requirement, *see infra* Section II.B, for present purposes we simply assume *arguendo* that the carry-on bag and the Christmas box were subjected to lawful airport administrative searches.

### B. The Subsequent DEA Searches of the Seized Blocks

■ The district court upheld the warrantless penetration of the opaque packaging enclosing the seized blocks on the ground that the DEA tests were "not . . . search[es] *per se* " but merely "more thorough examination[s] of the objects which had already been lawfully seized." *Pizarro–Calderon,* 829 F.Supp. at 515. We cannot agree.

The uncontroverted evidence reveals that until the DEA agents conducted their field tests, the opaque packaging enclosing the six blocks remained intact, precluding any "plain view" of their contents such as might permit a warrantless search in the absence of exigent circumstances. *See, e.g., United States v. Miller,* 769 F.2d 554, 558 (9th Cir.1985) (poking finger through plastic bag containing white powder, or cutting into opaque fiberglass container inside plastic bag, constitutes "search" requiring warrant, where both "containers were originally packed inside suitcase"). Thus, regardless whether the packaged blocks could have been subjected to lawful warrantless search *at the security checkpoint,* the question with which we are presented is whether a warrant was required before the packaging enclosing the blocks could be pierced once the blocks had been seized and *removed from the security checkpoint.* The government neither cites, nor have we found, any case upholding a warrantless administrative search for contraband unrelated to airline security concerns, absent exigent circumstances, consent, a finding of "virtual certainty," or some other recognized exception to the warrant requirement.[5]

---

**5.** The government does not contend that the packaged blocks, once removed from the checkpoint area, were subject to warrantless search for explosives. *See Skipwith,* 482 F.2d at 1277 (noting that modern technology permits hijacker to conceal plastic explosives in container no larger than a toothpaste tube). Moreover, any exigency adequate to support a warrantless search for explosives lapsed at or about the time of Pizarro's arrest, since he obviously would not be permitted to remain at large in the airport or to

board an aircraft. Likewise, any finding of exigency is totally belied by Avilés' subjective belief that the blocks contained cocaine and by their unhurried removal to the police station for DEA field-testing.

There is no evidence or contention that screeners, pursuant to practice or regulation, customarily open packages of this type or size to check for weapons or explosives, *notwithstanding the prior arrest of the passenger, and the seizure of the*

■ Although probable cause, as well as exigent circumstances, may support the warrantless *seizure* of an enclosed opaque container, *see Texas v. Brown*, 460 U.S. 730, 743, 103 S.Ct. 1535, 1544, 75 L.Ed.2d 502 (1983) (involving validity of warrantless *seizure* of tied-off balloon containing drugs), the *same* probable-cause showing is not necessarily sufficient to justify its subsequent warrantless *search*. *Id.* at 749–51, 103 S.Ct. at 1547–48 (Stevens, J., concurring); *United States v. Chadwick*, 433 U.S. 1, 13–14 n. 8, 97 S.Ct. 2476, 2484–85 n. 8, 53 L.Ed.2d 538 (1977); *Miller*, 769 F.2d at 558; *cf. United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (upholding seizure to prevent loss or destruction of contraband, but noting that "Fourth Amendment requires that [the police] obtain a warrant before examining contents of such a package").[6] These discrete treatments stem from the recognition that seizure temporarily deprives the defendant of a *possessory* interest only, whereas a search entails an intrusion upon *privacy* interests as well. *See generally Segura v. United States*, 468 U.S. 796, 806, 104 S.Ct. 3380, 3386, 104 S.Ct. 3380 (1984). Normally, therefore, once an exigency ends, as by an arrest or the seizure and custodial retention of a container by the police, a *neu-*

*tral judicial officer* must authorize any subsequent search on a showing of probable cause. *United States v. Soule*, 908 F.2d 1032, 1040 (1st Cir.1990) (citing *Shadwick v. City of Tampa*, 407 U.S. 345, 350, 92 S.Ct. 2119, 2122–23, 32 L.Ed.2d 783 (1972)).

■ Although the government was required to show that any warrantless search was valid under an exception to the warrant requirement, *see Doward*, 41 F.3d at 791; *United States v. Rutkowski*, 877 F.2d 139, 141 (1st Cir.1989), it has not attempted to demonstrate that the warrantless piercing of the packaged blocks was either an integral part of the security-checkpoint search or came within any other exception to the warrant requirement. The government instead simply concludes, as did the district court, *see Pizarro–Calderon*, 829 F.Supp. at 515, and without argumentation or citation to authority, that the warrantless piercing of the packaged blocks at the police station was simply an extension of the hand-search initiated at the checkpoint. *But see supra* note 5. Moreover, the government does not pretend that the DEA agents pierced the packaged blocks for any purpose other than to test for illicit drugs.[7] Thus, although we may affirm the denial of a suppression motion on

*carry-on luggage and its contents*, based on conduct unrelated to airline security. *Cf. Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984) (noting doctrine of "inevitable discovery," whereby "prosecution can establish by a preponderance of the evidence that the [evidence] ultimately or inevitably would have been discovered by lawful means" even if unlawful search had not occurred); *United States v. Hernandez–Cano*, 808 F.2d 779, 783 (11th Cir. 1987) (noting testimony from party conducting lawful search that but for intervention of unlawful search procedure, she would have continued search of luggage until she found suspicious package).

Finally, the evidence precluded a contention that the DEA testing was incident to Pizarro's arrest, *see Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), since the blocks had been removed from the arrest scene and from the presence of the arrestee. *See United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 2485–86, 53 L.Ed.2d 538 (1977) (noting that "[e]ven though ... the issuance of a warrant by a judicial officer was reasonably predictable, a line must be drawn"; invalidating footlocker search remote in time and place from arrest); *United States v. $639,558*, 955 F.2d 712 (D.C.Cir. 1992) (same). *But cf. United States v. Johns*, 469

U.S. 478, 483, 105 S.Ct. 881, 884–85, 83 L.Ed.2d 890 (1985) (finding no comparable contemporaneity requirement under automobile exception to warrant requirement).

6. *Chadwick* has been overruled only as to closed containers seized from inside an *automobile*. *See California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

7. The cases cited in the magistrate-judge's report and recommendation are inapposite to the DEA search in the present case. *See Pizarro–Calderon*, 829 F.Supp. at 516 (citing *United States v. Herzbrun*, 723 F.2d 773 (11th Cir.1984); *United States v. Wehrli*, 637 F.2d 408 (5th Cir.1981); *United States v. DeAngelo*, 584 F.2d 46 (4th Cir.), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 493 (1978); *United States v. Homburg*, 546 F.2d 1350 (9th Cir.1976); *United States v. Williams*, 516 F.2d 11 (2d Cir.1975)). Even assuming that airport security checkpoint searches are justified on the ground that the passenger's "implied consent" is irrevocable, *but see* Wayne R. Lafave, *Search and Seizure: A Treatise on the Fourth Amendment* §§ 10.6(c), 10.6(g), at 16–17, 31–33 (2d ed. 1987), thus permitting screeners to search throughout the carry-on bag and all closed containers within it, the passenger's im-

any ground supported by the record, *see, e.g., Soule,* 908 F.2d at 1036 n. 7, the legal theories relied on by the government have led to a dearth of record evidence—not to mention argumentation—to support such an exercise of discretion.[8]

The litigation strategy adopted by the government seems especially remarkable considering the portentous district court opinion previously entered in the *companion* case, *United States v. Figueroa–Cruz,* 822 F.Supp. 853 (D.P.R.1993); *see supra* note 2, wherein the government elected not to appeal from an order suppressing virtually identical evidence seized from the person next in line to Pizarro at the security checkpoint.[9] In the companion case, the district court suppressed

---

plied "consent" nonetheless would be *limited* to permitting searches *for the purpose of detecting weapons and explosives. See Florida v. Jimeno,* 500 U.S. 248, 252, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991) (noting that warrantless "consent"-based searches are limited in *scope* by the *terms* of defendant's consent); *see also, e.g., Wehrli,* 637 F.2d at 409 (noting that screener's "task [was] to insure that Wehrli's bag was devoid of skyjacking weapons," and the search "did not range beyond an area *reasonably calculated* to discover dangers to air safety") (emphasis added); *DeAngelo,* 584 F.2d at 47–48 (holding that passenger impliedly consents to full search of luggage, and if it "should be considered necessary to assure the safety of the travelling public, [the passenger] should be required to submit to it *for that purpose* ") (emphasis added); *Williams,* 516 F.2d at 12 (inquiring into "the *bounds* of any implied consent," but noting that bags of cocaine were found alongside a metal canister, so that screener might reasonably think white powder was explosive, rather than cocaine) (emphasis added).

By contrast, Avilés admitted that he delivered the blocks to the DEA for the very purpose of detecting narcotics. In these circumstances—once the focus of the search shifted from the detection of weapons to the detection of narcotics—a warrant was required unless the ensuing search came within another recognized exception to the warrant requirement. *Cf. Jacobsen,* 466 U.S. at 118–22, 104 S.Ct. at 1659–61 (noting that DEA did not need a search warrant to open a closed container to perform a field test on contents *because* the contents had already been disclosed by a prior "private party" search of that container); *Herzbrun,* 723 F.2d at 775 (noting that law enforcement officials obtained search warrant for bag after defendant withdrew from checkpoint, even though their search followed an *aborted* checkpoint search for weapons which might have uncovered same evidence (i.e., cocaine)).

8. Avilés conceded at the suppression hearing, and the magistrate judge later found, that the contents of the blocks could not have been "known" from their outward appearance. Thus, given the undisputed evidence that the blocks were completely enclosed in opaque packaging which had to be *pierced* even for field-testing, the government's unexplicated statement that the cocaine was in Avilés' "plain view" at the checkpoint must be premised on something more illuminating than its rose-colored perception. Nor

has the government attempted to argue that the outward appearance of the blocks, or the context in which they were seized, so "clearly announce[d]" the nature of their contents that it was a "virtual certainty" that they contained cocaine. *See Arkansas v. Sanders,* 442 U.S. 753, 764–65 n. 13, 99 S.Ct. 2586, 2593–94 n. 13, 61 L.Ed.2d 235 (1979); *see also Texas,* 460 U.S. at 751, 103 S.Ct. at 1548 (Stevens, J., concurring); *United States v. Corral,* 970 F.2d 719, 725 (10th Cir.1992) (contents must be "foregone conclusion"). *But see Miller,* 769 F.2d at 560–61 (squarely rejecting prosecution argument that no warrant was needed to search a lawfully-seized plastic bag containing an opaque fiberglass vial filled with cocaine, both of which had been lawfully seized from defendant's suitcase); *United States v. Donnes,* 947 F.2d 1430, 1439 (10th Cir.1991) (adopting *Miller* approach); *accord United States v. Cardona–Rivera,* 904 F.2d 1149, 1155 (7th Cir.1990); *cf. United States v. Prandy–Binett,* 995 F.2d 1069 (D.C.Cir.1993) (upholding *seizure* of package wrapped in opaque duct tape based on probable cause), *cert. denied,* —— U.S. ——, 114 S.Ct. 1196, 127 L.Ed.2d 545 (1994); *United States v. Barrios–Moriera,* 872 F.2d 12 (2d Cir.) (same), *cert. denied,* 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989). We think it would be imprudent in the present vacuum either to embrace or reject—for the first time—a "virtual certainty" exception to the warrant requirement.

Nor has the government suggested that the DEA testing should be upheld under the "inventory search" exception to the warrant requirement. *Compare, e.g., Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987) (even closed containers may be opened pursuant to inventory search exception) *with United States v. Infante–Ruiz,* 13 F.3d 498, 504 (1st Cir.1994) (to justify warrantless search as inventory search, government must introduce evidence of "established procedures and standard criteria" governing inventory process). In addition to the government's failure to evince an established inventory procedure or policy, such a rationale is effectively disavowed by Avilés' testimony expressly predicating the DEA searches on the need to field-test the contents of the enclosed blocks for cocaine.

9. The government apparently decided to try Figueroa–Cruz separately due to insufficient evidence that the two men were traveling in tandem.

the cocaine Figueroa was carrying—in *Christmas gift packages* inside his luggage—because Avilés had permitted the DEA to conduct the *initial* search at the airport police station without first obtaining a warrant. Avilés testified that he arrested Figueroa based on probable cause to believe that the gift boxes, exposed to view during the security-checkpoint search of his carry-on bag, were so similar to Pizarro's gift box that it was likely that they too contained blocks of cocaine.

The government's attempt to distinguish the two cases misses the mark. The carry-on bags, the gift boxes, and the blocks enclosed in opaque packaging—*all* were discrete closed containers. Even assuming the warrantless checkpoint searches conducted on the carry-on bags and the gift boxes were lawful, the government nevertheless failed to establish that the subsequent warrantless DEA penetration of the previously unopened blocks enclosed in opaque packaging came within any recognized exception to the warrant requirement. Consequently, their warrantless search at the police station—after any exigency had ceased—violated the Fourth amendment.

### III

### *CONCLUSION*

As the government failed to shoulder its burden, by demonstrating either that its warrantless searches of the opaque packaged blocks were permissible under the Fourth Amendment, or that the admission of the tainted evidence was harmless beyond a reasonable doubt, *see United States v. Modarressi,* 886 F.2d 6, 8 (1st Cir.1989), appellant's conviction must be reversed.

*The district court judgment is reversed.*