[No. B199122. Second Dist., Div. Six. July 16, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
DREW MICHAEL ENDACOTT, Defendant and Appellant.

#### COUNSEL

Nasatir, Hirsch, Podberesky & Genego and William J. Genego for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

#### OPINION

**GILBERT, P. J.**—Defendant arrives at Los Angeles International Airport on a plane from a foreign country. Without probable cause, customs officials seize defendant's laptop computers and view their files. This "border search" does not violate the Fourth Amendment.

Drew Michael Endacott was charged with 10 counts of possession or control of child pornography. (Pen. Code, § 311.11.) The evidence was discovered during a routine suspicionless border search of Endacott's computers and other digital media. Endacott's motion to suppress the evidence pursuant to Penal Code section 1538.5 was denied. He pled no contest to one count of possession or control of child pornography. We conclude the search was valid and affirm.

### FACTS

On September 29, 2006, Endacott landed at Los Angeles International Airport on a flight from Thailand. He proceeded with his luggage to the customs area of the international terminal.

David Tolentino, a United States Customs and Border Protection employee, encountered Endacott in the customs inspection area. He asked Endacott the purpose of his travel to Thailand and how long he had stayed. Endacott

replied that he went to Thailand to rest, to visit a friend and to seek employment. Endacott said he stayed for four months.

Tolentino noticed that Endacott had among his luggage several plastic cases, like tool cases. He also noticed that Endacott was wearing a leather jacket and weight-lifter-type gloves. Tolentino said it was unusual for a person to vacation in Thailand for four months, to have plastic cases among his luggage and to come from a place as hot as Thailand wearing a leather jacket and gloves. He sent Endacott for secondary inspection.

Customs Officer Robert Williams greeted Endacott at the secondary inspection area. Williams obtained a "binding declaration" from Endacott confirming that all the items in his possession belonged to him.

Endacott had two laptop computers in his possession. Williams said that when someone presents a laptop to him, he usually powers it up and conducts a query for pictures and videos. He conducted such an inquiry in this case because Endacott was coming from Thailand and Thailand is considered to be a high risk for child pornography.

Williams's query of Endacott's laptop showed a screen full of nude females who appeared to be preadolescent. Williams asked Endacott about the images. Endacott replied that the screen showed pictures of models. When Williams asked how old the models were, Endacott replied they were about 14 years old. Endacott told Williams that the images were legal because he got them from a legal Web site.

Williams called Special Agent Lynn Phelan to view the results of the computer query. Phelan saw the picture of a nude young girl with exposed vaginal lips. Williams discovered other digital media in Endacott's belongings that might contain similar images. Phelan decided to retain the computers and other digital media. She asked for and received Endacott's consent to search the computers and other digital media. Endacott left the customs area.

Two days later another special agent searched Endacott's computers and digital media. One laptop contained 6,071 images of pubescent and prepubescent girls in various states of undress. An external hard drive contained 3,961 such images and another external hard drive contained 7,386 such images.

The trial court concluded the search was without probable cause or even a reasonable suspicion. But the court upheld the search as a border search.

## DISCUSSION

### I

Endacott contends the search of his laptop computer violated the Fourth Amendment because it was done without reasonable suspicion. Endacott believes his computer is entitled to greater protection than other items that may be searched at the border because it contains expressive materials.

In *United States v. Flores-Montano* (2004) 541 U.S. 149, 152–153 [158 L.Ed.2d 311, 124 S.Ct. 1582], the Supreme Court reiterated the well-established rule that, " 'searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.' " (Quoting *United States v. Ramsey* (1977) 431 U.S. 606, 616 [52 L.Ed.2d 617, 97 S.Ct. 1972].) The court held that the government did not need reasonable suspicion to remove, disassemble, and inspect a vehicle's fuel tanks at the border. (*Flores-Montano*, at p. 155.)

In *U.S. v. Ickes* (4th Cir. 2005) 393 F.3d 501, the court upheld a suspicionless border search of the defendant's computer. In so doing, the court rejected the defendant's argument that his computer deserved greater protection from border searches than other items because it may contain expressive materials. (*Id.* at pp. 505–507.) The court noted that expressive materials could include terrorist communications. (*Id.* at p. 506.) Creating an exception for expressive materials would defeat the purpose of the border search doctrine, which is to allow the sovereign to protect itself. (*Ibid.*) Other federal cases not involving border searches have treated computers the same as any other container for the purposes of search and seizure law. (See, e.g., *Trulock v. Freeh* (4th Cir. 2001) 275 F.3d 391, 403 [password-protected computer files are analogous to locked footlocker]; *U.S. v. Al-Marri* (S.D.N.Y. 2002) 230 F.Supp.2d 535, 541 ["Courts have uniformly agreed that computers should be treated as if they were closed containers."].)

The lone dissenting voice is *U.S. v. Arnold* (C.D.Cal. 2006) 454 F.Supp.2d 999. There the court analogized a computer search to a strip search or body cavity search that requires reasonable suspicion. (*Id.* at pp. 1002–1003.) The court reasoned, "[O]pening and viewing confidential computer files implicates dignity and privacy interests. Indeed, some may value the sanctity of private thoughts memorialized on a data storage device above physical privacy." (*Id.* at p. 1003.)

*Arnold* was recently overturned on appeal. (*U.S. v. Arnold* (9th Cir. 2008) 523 F.3d 941.) The appeals court stated it was error for the district court to

rely on cases involving the search of a person. The court of appeals concluded that no suspicion is needed to search a computer at the border.

Indeed, the human species has not yet, at least, become so robotic that opening a computer is similar to a strip search or body cavity search. Of course viewing confidential computer files implicates dignity and privacy interests. But no more so than opening a locked briefcase, which may contain writings describing the owner's intimate thoughts or photographs depicting child pornography. A computer is entitled to no more protection than any other container. The suspicionless border search of Endacott's computer was valid.

## II

Endacott contends that, even if the initial border search was valid, the later search of his computers and digital media detained by customs agents was invalid.

Endacott claims that his plea of no contest was based in part on images contained on digital media subject to the later search. He points out that some of the evidence introduced at the preliminary hearing came from the later search. But Endacott pled to only one count. There is no showing in the record that his plea was based on any particular evidence. Obviously the hundreds of images obtained in the initial search are more than sufficient to sustain a plea to one count. Endacott has failed to show his plea was based on evidence discovered in the later search. In any event, the later search was valid.

Endacott relies on the rule that although no judicial authorization is necessary for a search or seizure in exigent circumstances, once the exigency ends, a judicial officer must authorize any subsequent search. (Citing *U.S. v. Doe* (1st Cir. 1995) 61 F.3d 107, 110–111; *United States v. Montoya de Hernandez* (1985) 473 U.S. 531, 553 [87 L.Ed.2d 381, 105 S.Ct. 3304] (dis. opn. of Brennan, J.).)

But here the warrantless search was not based on exigent circumstances; it was based on Endacott's border entry. Although exigent circumstances may dissipate, the border does not. The same circumstances that authorized the warrantless and suspicionless initial search of Endacott's computer were present at the subsequent search. That customs agents allowed Endacott to leave and resumed the search two days later does not make the search invalid.

Endacott argues the government should not be able to detain items without suspicion for as long as it desires, while searching for whatever it chooses.

We need not decide that question because that is not what happened here. By the time the government detained Endacott's electronic data, it had more than probable cause to believe the data contained child pornography. Moreover, that the government had the opportunity to obtain a warrant does not mean it was required to do so. (See *United States v. Montoya de Hernandez, supra*, 473 U.S. 531 [valid search where woman suspected of smuggling narcotics in alimentary canal held incommunicado at border for almost 16 hours before officials sought court order authorizing X-ray and other tests].)

We need not discuss whether Endacott's consent to the subsequent search is voluntary.

The judgment is affirmed.

Coffee, J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 22, 2008, S166225. Werdegar, J., did not participate therein.