UNITED STATES of America,
Plaintiff-Appellant,

v.

Jorge A. PULIDO–BAQUERIZO,
Defendant-Appellee.

No. 86–5054.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1986.

Decided Sept. 23, 1986.

William C. Price, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Raul Ayala, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellee.

Before ANDERSON, PREGERSON, and REINHARDT, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The government seeks to overturn the district court's granting of Jorge A. Pulido-Baquerizo's (Pulido) motion to suppress evidence seized and statements made in the course of an airport search. The suppression of both the evidence and the statements centers upon the extent to which a passenger impliedly consents to a visual inspection and limited hand search of carry-on luggage for the detection of weapons or explosives as a condition to airline travel. In light of the gravity of the dangers involved in airline terrorism and the traveling public's awareness of minimally intrusive airplane boarding inspections, we find the district court erred in granting the motion to suppress. Accordingly, we reverse.

## I.

### FACTS

On September 30, 1985, at approximately 8:00 a.m., appellee Pulido attempted to board an airplane at Terminal 3 of the Los Angeles International Airport. Pulido approached the pre-boarding inspection checkpoint and placed two briefcases onto the x-ray machine's conveyor belt. The security agent operating the machine, Willie Collins, noticed a "dark object with what looked to be lines in it" in one of the briefcases. Suspecting the object might be a bomb, Collins turned to a second agent, Jessie Gonzalez, and asked if she could determine what the object was. She could not. Paul McCurn, the agents' supervisor who was stationed nearby, was summoned to see if he could identify the object. He was also unable to identify the object, but privately believed he saw wires which indicated a bomb or explosive device.

At this point, Pulido was asked what was in the briefcase. He answered, "clothes." The case was run through the x-ray ma-

chine a second time. Since none of the agents could identify the object, McCurn removed the briefcase to a nearby inspection table and conducted a visual inspection and hand search.[1] The search disclosed 2138 grams of cocaine. Pulido was indicted for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

At the pretrial suppression hearing, Pulido moved to suppress evidence obtained by the search and the inculpatory statements he made in the course of the search. The district court found Pulido did not give express consent to search his briefcase, legal justification did not exist on the basis of implied consent, and that Pulido was not free to leave during the agent's questioning. On these grounds the motion to suppress was granted.

## II.

### THE SEARCH

The government argues that by placing his briefcase on the x-ray machine's conveyor belt, Pulido impliedly consented to the subsequent visual inspection and hand search. The issue of implied consent presents a question of mixed law and fact which we review *de novo*. *See United States v. McConney*, 728 F.2d 1195, 1199–1204 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). It is clear the search, conducted without a warrant, was *per se* unreasonable under the probable cause requirement of the fourth amendment and unlawful unless conducted pursuant to Pulido's consent, express or implied. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

In *United States v. Davis*, 482 F.2d 893, 912–914 (9th Cir.1973), we indicated that a pre-boarding search is not unlawful if there is implied consent, the search is reasonable, and the prospective airplane boarder has the right to leave without being subject to a search. In delineating these requirements, we stated:

> [A] screening of passengers and of the articles that will be accessible to them in flight does not exceed constitutional limitations provided that the screening process is no more extensive nor intensive than necessary, in the light of current technology, to detect the presence of weapons or explosives, that it is confined in good faith to that purpose, and that potential passengers may avoid the search by electing not to fly.

*Davis*, 482 F.2d at 913 (footnote omitted). Having approached the question in light of the circumstances surrounding today's airport checkpoints, we hold that those passengers placing luggage on an x-ray machine's conveyor belt for airplane travel at a secured boarding area impliedly consent to a visual inspection and limited hand search of their luggage if the x-ray scan is inconclusive in determining whether the luggage contains weapons or other dangerous objects.

Under the fourth amendment, only unreasonable searches and seizures are prohibited. The determination of reasonableness requires a balancing of an individual's right to be free of intrusive searches with society's interest in safe air travel. "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya De Hernandez*, 473 U.S. ——, ——, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381, 388 (1985).

The governmental interest in detecting the weapons employed in airline terrorism is great. Airplane skyjacking and bombings at airports have proliferated since our decision in *Davis*. Additionally, firearms and explosives can be small and easily concealed. Their detection is difficult if limited to an inconclusive x-ray scan. The scan and subsequent search involves only a

---

**1.** At some point Pulido was asked, "What is it, marijuana?" He replied, "No." When asked if it was cocaine, he replied, "Yes. Please let me go." The testimony conflicts as to when in the course of the search these statements were made. However, the district court was correct in finding express consent for the search was not given.

slight privacy intrusion as long as the scope of the search is limited to the detection of weapons, explosives, or any other dangerous devices, and is conducted in a manner which produces negligible social stigma. Given these circumstances, a visual inspection and limited hand search of luggage which is used for the purpose of detecting weapons or explosives, and not in order to uncover other types of contraband, is a privacy intrusion we believe free society is willing to tolerate. Our approach is consistent with that of other circuits where the purpose of the search is to detect skyjack weaponry. *See United States v. Herzbrun*, 723 F.2d 773, 776 (11th Cir.1984) (automatic consent to a hand search); *United States v. Wehrli*, 637 F.2d 408, 409–10 (5th Cir.), *cert. denied*, 452 U.S. 942, 101 S.Ct. 3089, 69 L.Ed.2d 958 (1981) (implied consent where x-ray inconclusive); *United States v. DeAngelo*, 584 F.2d 46, 47–48 (4th Cir.1978), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 493 (1979) (implied consent); *United States v. Williams*, 516 F.2d 11, 12 (2d Cir.1975) (per curiam) (implied consent).

Pulido argues that under *Davis* his statements show he preferred to leave rather than submit to the search. However, *Davis* does not specifically hold that consent to an additional search could be withdrawn after an inconclusive x-ray scan if the passenger agreed not to board the plane. While *Davis* implies a passenger may withhold such consent by electing not to fly, *Davis* did not determine at what point in the boarding process a passenger may decide not to fly and thereby withdraw his implied consent. In *United States v. Homburg*, 546 F.2d 1350 (9th Cir.1976), *cert. denied*, 431 U.S. 940, 97 S.Ct. 2654, 53 L.Ed.2d 258 (1977), in dicta we refused to adopt a general doctrine of implied consent in the context of airport luggage searches, stating that "[s]uch a view runs contrary to *Davis*." *Homburg* at 1352. However, three years later, in *United States v. Henry*, 615 F.2d 1223, 1228 (9th Cir.1980), we noted that the precise issue of whether implied consent to a subsequent search existed by the mere fact of placing luggage on the x-ray machine remained undecided. "We express no opinion as to whether submission to the x-ray scan constitutes consent to physical inspection if requested." *Henry* at 1229 n. 7 (citing *United States v. DeAngelo*, 584 F.2d 46 (4th Cir.1978), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 493 (1979)).

The requirement in *Davis* of allowing passengers to avoid the search by electing not to fly does not extend to a passenger who has already submitted his luggage for an x-ray scan. *Davis* requires notice, not actual knowledge, of the need to submit luggage for inspection. It was met here by evidence showing signs at the airport advised passengers of the luggage inspection. *See Henry* at 1231. Moreover, to accept Pulido's argument would circumvent the purpose of conducting pre-boarding searches. *See DeAngelo* at 48. A rule allowing a passenger to leave without a search after an inconclusive x-ray scan would encourage airline terrorism by providing a secure exit where detection was threatened. Also, an airport screening agent has a duty to ferret out firearms and explosive devices carried by passengers. *See Wehrli* at 410. This duty could not be fulfilled if the agent was prohibited from conducting a visual inspection and limited hand search after an inconclusive x-ray scan. *Id.* Thus, if a potential passenger chooses to avoid a search, he must elect not to fly before placing his baggage on the x-ray machine's conveyor belt. *See DeAngelo* at 47–48.

### III.

### THE STATEMENTS

Between the time Mr. McCurn was summoned and the subsequent hand search, Pulido made inculpatory statements to the effect that his briefcase contained cocaine. The district court suppressed the statements. In this, the district court's oral findings make it unclear whether the statements were suppressed on the basis that they were the fruit of the search or because they were the product of custodial

questioning. Pulido, however, concedes he was not in custody at the time of the search.[2] We therefore approach the question of the admissibility of the statements on the ground that they were the fruit of the search.[3] In light of our holding that the search of Pulido's briefcase was not unreasonable, it follows that the inculpatory statements were not the product of an unconstitutional search requiring them to be suppressed.

REVERSED.

---

**2.** Appellee's Brief at 40–41.

**3.** Our result would be the same in either event. To find that the statements were the result of a custodial interrogation is clearly erroneous considering the noncoercive nature of the circumstances surrounding the questioning. *See Unit-* *ed States v. Luther*, 521 F.2d 408, 410 (9th Cir. 1975) (per curiam).