USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1096 UNITED STATES OF AMERICA, Appellee, v. JOHN DOE, a/k/a GERONIMO PIZARRO-CALDERON, Defendant, Appellant.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________  ____________________ Torruella, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________  ____________________ Rafael D. Castro Lang for appellant. _____________________ Jos A. Quiles-Espinosa, Senior Litigation Counsel, with whom _________________________ Guillermo Gil, United States Attorney, and Ernesto Hern ndez-Mil n, _____________ ________________________ Assistant United States Attorney, were on brief for appellee.  ____________________ August 4, 1995  ____________________ CYR, Circuit Judge. Appellant Geronimo Pizarro-Cald- CYR, Circuit Judge. _____________ eron ("Pizarro") contends that the district court erred in refusing to suppress six block-like articles packaged in opaque beige and brown tape which ultimately led to his conviction for possessing cocaine with intent to distribute in violation of 21 U.S.C. 841(a)(1) (1993). We reverse.  I I BACKGROUND BACKGROUND __________ The district court adopted the findings recommended by the magistrate judge who conducted the suppression hearing. On January 8, 1993, Security Officer Gladys Martinez del Valle ("Martinez") was screening passengers and monitoring their carry- on luggage for weapons and explosives at a security checkpoint in the Isla Verde Airport terminal. See 14 C.F.R. 107.20 (1995) ___ (Federal Aeronautics Administration ("FAA") regulation mandating screening requirements for carry-on luggage), 107.21 (banning unauthorized possession of any "explosive, incendiary, or deadly or dangerous weapons" beyond airport checkpoints). Prominent signs forewarned passengers, in English and Spanish, that their persons and carry-on luggage were subject to screening and search for weapons and explosives. Security screeners normally use x- ray machines to scan all carry-on luggage; metal detectors and hand scanners to screen passengers.  While tending the x-ray monitor, Martinez noticed a carry-on bag containing an unidentifiable dark object. She had been trained to regard such dense, nonreflective objects as 2 possible camouflage for weapons or explosives. Upon questioning by Martinez, appellant Pizarro stated that the carry-on bag belonged to him, and the nonreflective objects inside were gift boxes containing "figurines." Concerned that the figurines reflected no distinguishable silhouette on the x-ray monitor, Martinez asked Pizarro to open the carry-on bag. When Pizarro "sort of hesitated," United States Department of Agriculture Inspector Jos Mercado, working beside Martinez, directed Pizarro to open the carry-on bag, then summoned a local law enforcement officer, Juan Avil s, to the security checkpoint.1  Pizarro opened the carry-on bag in the presence of Martinez, Officer Avil s, and Inspector Mercado, revealing a box wrapped in Christmas paper. The box contained a layer of sani- tary napkins, a layer of dark blue paper and, finally, six blocks wrapped in opaque beige and brown tape. A nineteen-year veteran of the Puerto Rico Police, Officer Avil s immediately suspected that the concealed blocks contained cocaine. Whereupon he seized the carry-on bag and its contents, then arrested and handcuffed Pizarro.2   ____________________ 1Officer Avil s was employed by the airport administration to patrol the security checkpoint area and respond to incidents encountered by screeners and inspectors, in accordance with FAA regulations requiring the presence of a local law enforcement official. See 14 C.F.R. 107.15.  ___ 2At about the same time, Martinez noticed another nonreflec- tive object on the x-ray monitor, similar to the one observed in Pizarro's carry-on bag. The passenger in line behind Pizarro  Ariel Figueroa-Cruz claimed ownership of the second bag, which was found to contain two Christmas gift boxes similar to the one Pizarro had been carrying. Without opening the gift boxes, Officer Avil s placed Figueroa under arrest, and transported both 3 After placing Pizarro in an airport police-station cell, Avil s contacted the United States Drug Enforcement Admin- istration ("DEA"). Shortly thereafter, DEA agents tested the blocks by piercing their opaque wrappings; the contents tested positive for cocaine. In due course, Pizarro was indicted for possessing six kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. 841(a)(1), (b)(1)(A). Pizarro moved to suppress the test results and the cocaine, on the ground that the warrantless searches of the carry-on bag and the containers inside it (i.e., the Christmas box and the blocks enclosed in intact, opaque wrapping) violated the Fourth Amendment to the United States Constitution. The government successfully defended the challenged DEA testing as a mere continuation of the administrative search aimed at ensuring airline security. See United States v. Pizarro-Calderon, 829 F. ___ _____________ ________________ Supp. 511, 515 (D.P.R. 1993). Following a jury trial, Pizarro was convicted and sentenced.  II II DISCUSSION DISCUSSION __________ The government must demonstrate that the warrantless DEA testing of the enclosed blocks either entailed no Fourth Amendment search or came within some recognized exception to the warrant requirement. See, e.g., United States v. Doward, 41 F.3d ___ ____ _____________ ______  ____________________ suspects to the airport police station. See United States v. ___ _____________ Figueroa-Cruz, 822 F. Supp. 853 (D.P.R. 1993); infra note 9 and _____________ _____ accompanying text. 4 789, 791 (1st Cir. 1994).3 The government contends that the carry-on bag initially was opened and searched at the airport security checkpoint pursuant to a lawful administrative search for weapons and explosives. See, e.g., United States v. Skip- ___ ____ ______________ _____ with, 482 F.2d 1272, 1277-78 (5th Cir. 1973) (holding that ____ inadvertent discovery of evidence of criminal activity in course of lawful security search for weapons at airport checkpoint does not violate Fourth Amendment). Further, it argues, once Pi- zarro's carry-on bag and the Christmas gift box lawfully had been opened for security purposes, it was proper to seize and open the packaged blocks thereby exposed to Avil s' "plain view." See ___ Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971). ________ _____________ Pizarro protests on both counts. First, he says, carry-on luggage screenings must be confined to ferreting out threats to airline security (i.e., weapons and explosives used in air piracy), whereas the customary presence of Officer Avil s at the security checkpoint permitted an inference that security concerns were a mere subterfuge for intercepting contraband posing no threat to airline security. Second, even assuming probable cause to seize the suspicious blocks, a search warrant was required before the intact, opaque packaging enclosing the blocks could be pierced to test for cocaine.   ____________________ 3The Fourth Amendment is implicated even though airport security checkpoints are manned by nongovernmental personnel, since the FAA prescribes extensive administrative directives. See United States v. Davis, 482 F.2d 893, 896-97 (9th Cir. 1973); ___ _____________ _____ see also Air Transportation Security Act of 1974, Pub. L. No. ___ ____ 93-366, 88 Stat. 415 (1974) (codified as amended at 49 U.S.C.  1356, 1357, 1371, 1372, 1472, 1516); 14 C.F.R. 108.9.  5 A. The Searches and Seizure at the Security Checkpoint4  A. The Searches and Seizure at the Security Checkpoint ___________________________________________________ Pizarro argues that the warrantless search of the carry-on bag violated his Fourth Amendment rights, ab initio, __ ______ since the customary presence of Avil s at the checkpoint subvert- ed an otherwise lawful airline security screening into a warrant- less general search for contraband (viz., cocaine) unrelated to airline security. The district court found that  the search was conducted by a security agent at the airport, and that the local police officer was summoned to the site of the search only after the initial X-ray scan did _____ not rule out the presence of either weapons or explosives in defendant's luggage, requir- ing the presence of additional security. Pizarro-Calderon, 829 F. Supp. at 514 (emphasis added). ________________ Routine security searches at airport checkpoints pass constitutional muster because the compelling public interest in curbing air piracy generally outweighs their limited intrusive- ness. See, e.g., United States v. Pulido-Baquerizo, 800 F.2d ___ ____ ______________ ________________ 899, 902 (9th Cir. 1986); cf. United States v. Ferrer, 999 F.2d ___ _____________ ______ 7, 9 (1st Cir. 1993) (upholding warrantless search of checked luggage on alternate ground of "abandonment," but faulting government's "falling-domino approach, by which each intrusion diminishes privacy expectations enough to permit further in- fringements"). Consequently, all carry-on luggage can be sub- ___ jected to initial x-ray screening for weapons and explosives  ____________________ 4The factual findings underlying a suppression ruling are reviewed for clear error. United States v. Lewis, 40 F.3d 1325, _____________ _____ 1332-33 (1st Cir. 1994). Related rulings of law, including the "reasonableness" of a particular warrantless search, are accorded plenary review. Id.  ___ 6 without offending the Fourth Amendment. In the event the initial x-ray screening is inconclusive as to the presence of weapons or explosives, the luggage may be hand-searched as reasonably required to rule out their presence. Pulido-Baquerizo, 800 F.2d ________________ at 902.  Other contraband inadvertently discovered during a routine checkpoint search for weapons and explosives may be seized and introduced in evidence at trial even though unrelated to airline security. See, e.g., Skipwith, 482 F.2d at 1277-78. ___ ____ ________ On the other hand, lawful airline security searches of carry-on luggage may not be enlarged or tailored systemically to detect contraband (e.g., narcotics) unrelated to airline security. See, ____ ___ e.g., United States v. $124,570 U.S. Currency, 873 F.2d 1240, ____ ______________ _______________________ 1243-45 (9th Cir. 1989) (upholding suppression of contraband unrelated to airline security where screeners were rewarded monetarily by law enforcement authorities for detecting such contraband in carry-on luggage).  As we conclude that the government failed to demon- strate that the subsequent warrantless search of the packaged __________ blocks by the DEA satisfied the Fourth Amendment warrant require- ment, see infra Section II.B, for present purposes we simply ___ _____ assume arguendo that the carry-on bag and the Christmas box were ________ subjected to lawful airport administrative searches.  B. The Subsequent DEA Searches of the Seized Blocks B. The Subsequent DEA Searches of the Seized Blocks ________________________________________________ The district court upheld the warrantless penetration of the opaque packaging enclosing the seized blocks on the ground 7 that the DEA tests were "not . . . search[es] per se" but merely ___ __ "more thorough examination[s] of the objects which had already been lawfully seized." Pizarro-Calderon, 829 F. Supp. at 515. ________________ We cannot agree. The uncontroverted evidence reveals that until the DEA agents conducted their field tests, the opaque packaging enclos- ing the six blocks remained intact, precluding any "plain view" of their contents such as might permit a warrantless search in the absence of exigent circumstances. See, e.g., United States ___ ____ _____________ v. Miller, 769 F.2d 554, 558 (9th Cir. 1985) (poking finger ______ through plastic bag containing white powder, or cutting into opaque fiberglass container inside plastic bag, constitutes "search" requiring warrant, where both "containers were original- ly packed inside suitcase"). Thus, regardless whether the packaged blocks could have been subjected to lawful warrantless search at the security checkpoint, the question with which we are __ ___ ________ __________ presented is whether a warrant was required before the packaging enclosing the blocks could be pierced once the blocks had been seized and removed from the security checkpoint. The government _______ ____ ___ ________ __________ neither cites, nor have we found, any case upholding a warrant- less administrative search for contraband unrelated to airline security concerns, absent exigent circumstances, consent, a finding of "virtual certainty," or some other recognized excep- tion to the warrant requirement.5   ____________________ 5The government does not contend that the packaged blocks, once removed from the checkpoint area, were subject to warrant- less search for explosives. See Skipwith, 482 F.2d at 1277 ___ ________ 8 Although probable cause, as well as exigent circum- stances, may support the warrantless seizure of an enclosed _______ opaque container, see Texas v. Brown, 460 U.S. 730, 743 (1983) ___ _____ _____ (involving validity of warrantless seizure of tied-off balloon _______ containing drugs), the same probable-cause showing is not neces- ____ sarily sufficient to justify its subsequent warrantless search. ______ Id. at 749-51 (Stevens, J., concurring); United States v. Chad- ___ _____________ _____ wick, 433 U.S. 1, 13-14 n.8 (1977); Miller, 769 F.2d at 558; cf. ____ ______ ___  ____________________ (noting that modern technology permits hijacker to conceal plastic explosives in container no larger than a toothpaste tube). Moreover, any exigency adequate to support a warrantless search for explosives lapsed at or about the time of Pizarro's arrest, since he obviously would not be permitted to remain at large in the airport or to board an aircraft. Likewise, any finding of exigency is totally belied by Aviles' subjective belief that the blocks contained cocaine and by their unhurried removal to the police station for DEA field-testing.  There is no evidence or contention that screeners, pursuant to practice or regulation, customarily open packages of this type or size to check for weapons or explosives, notwithstanding the _______________ ___ prior arrest of the passenger, and the seizure of the carry-on _____ ______ __ ___ _________ ___ ___ _______ __ ___ ________ luggage and its contents, based on conduct unrelated to airline _______ ___ ___ ________ security. Cf. Nix v. Williams, 467 U.S. 431, 444 (1984) (noting ___ ___ ________ doctrine of "inevitable discovery," whereby "prosecution can establish by a preponderance of the evidence that the [evidence] ultimately or inevitably would have been discovered by lawful means" even if unlawful search had not occurred); United States ______________ v. Hernandez-Cano, 808 F.2d 779, 783 (11th Cir. 1987) (noting ______________ testimony from party conducting lawful search that but for intervention of unlawful search procedure, she would have contin- ued search of luggage until she found suspicious package).  Finally, the evidence precluded a contention that the DEA testing was incident to Pizarro's arrest, see Chimel v. Califor- ___ ______ ________ nia, 395 U.S. 752 (1969), since the blocks had been removed from ___ the arrest scene and from the presence of the arrestee. See ___ United States v. Chadwick, 433 U.S. 1, 15 (1977) (noting that _____________ ________ "[e]ven though . . . the issuance of a warrant by a judicial officer was reasonably predictable, a line must be drawn"; invalidating foot-locker search remote in time and place from arrest); United States v. $639,558, 955 F.2d 712 (D.C. Cir. 1992) _____________ ________ (same). But cf. United States v. Johns, 469 U.S. 478, 483 (1985) ___ ___ _____________ _____ (finding no comparable contemporaneity requirement under automo- bile exception to warrant requirement). 9 United States v. Jacobsen, 466 U.S. 109, 114 (1984) (upholding _____________ ________ seizure to prevent loss or destruction of contraband, but noting that "Fourth Amendment requires that [the police] obtain a warrant before examining contents of such a package").6 These discrete treatments stem from the recognition that seizure temporarily deprives the defendant of a possessory interest only, __________ whereas a search entails an intrusion upon privacy interests as _______ well. See generally Segura v. United States, 468 U.S. 796, 806 ___ _________ ______ _____________ (1984). Normally, therefore, once an exigency ends, as by an arrest or the seizure and custodial retention of a container by the police, a neutral judicial officer must authorize any subse- _______ ________ _______ quent search on a showing of probable cause. United States v. _____________ Soule, 908 F.2d 1032, 1040 (1st Cir. 1990) (citing Shadwick v. _____ ________ City of Tampa, 407 U.S. 345, 350 (1972)). _____________ Although the government was required to show that any warrantless search was valid under an exception to the warrant requirement, see Doward, 41 F.3d at 791; United States v. ___ ______ ______________ Rutkowski, 877 F.2d 139, 141 (1st Cir. 1989), it has not attempt- _________ ed to demonstrate that the warrantless piercing of the packaged blocks was either an integral part of the security-checkpoint search or came within any other exception to the warrant require- ment. The government instead simply concludes, as did the district court, see Pizarro-Calderon, 829 F. Supp. at 515, and ___ ________________ without argumentation or citation to authority, that the warrant-  ____________________ 6Chadwick has been overruled only as to closed containers ________ seized from inside an automobile. See California v. Acevedo, 500 __________ ___ __________ _______ U.S. 565 (1991).  10 less piercing of the packaged blocks at the police station was simply an extension of the hand-search initiated at the check- point. But see supra note 5. Moreover, the government does not ___ ___ _____ pretend that the DEA agents pierced the packaged blocks for any purpose other than to test for illicit drugs.7 Thus, although  ____________________ 7The cases cited in the magistrate-judge's report and recommendation are inapposite to the DEA search in the present case. See Pizarro-Calderon, 829 F. Supp. at 616 (citing United ___ ________________ ______ States v. Herzbrun, 723 F.2d 773 (11th Cir. 1984); United States ______ ________ _____________ v. Wehrli, 637 F.2d 408 (5th Cir. 1981); United States v. De- ______ ______________ ___ Angelo, 584 F.2d 46 (4th Cir.), cert. denied, 440 U.S. 935 ______ _____ ______ (1978); United States v. Homburg, 546 F.2d 1350 (9th Cir. 1976); _____________ _______ United States v. Williams, 516 F.2d 11 (2d Cir. 1975)). Even _____________ ________ assuming that airport security checkpoint searches are justified on the ground that the passenger's "implied consent" is irrevoca- ble, but see Wayne R. Lafave, Search and Seizure: A Treatise on ___ ___ _________________________________ the Fourth Amendment 10.6(c), 10.6(g), at 16-17, 31-33 (2d ed. ____________________ 1987), thus permitting screeners to search throughout the carry- on bag and all closed containers within it, the passenger's implied "consent" nonetheless would be limited to permitting _______ searches for the purpose of detecting weapons and explosives.  ___ ___ _______ __ _________ _______ ___ __________ See Florida v. Jimeno, 500 U.S. 248, 252 (1991) (noting that ___ _______ ______ warrantless "consent"-based searches are limited in scope by the _____ terms of defendant's consent); see also, e.g., Wehrli, 637 F.2d _____ ___ ____ ____ ______ at 409 (noting that screener's "task [was] to insure that Weh- rli's bag was devoid of skyjacking weapons," and the search "did not range beyond an area reasonably calculated to discover __________ __________ dangers to air safety") (emphasis added); DeAngelo, 584 F.2d at ________ 47-48 (holding that passenger impliedly consents to full search of luggage, and if it "should be considered necessary to assure the safety of the travelling public, [the passenger] should be required to submit to it for that purpose") (emphasis added); ___ ____ _______ Williams, 516 F.2d at 12 (inquiring into "the bounds of any ________ ______ implied consent," but noting that bags of cocaine were found alongside a metal canister, so that screener might reasonably think white powder was explosive, rather than cocaine) (emphasis added).  By contrast, Avil s admitted that he delivered the blocks to the DEA for the very purpose of detecting narcotics. In these circumstances once the focus of the search shifted from the detection of weapons to the detection of narcotics a warrant was required unless the ensuing search came within another recog- nized exception to the warrant requirement. Cf. Jacobsen, 466 ___ ________ U.S. at 118-22 (noting that DEA did not need a search warrant to open a closed container to perform a field test on contents because the contents had already been disclosed by a prior _______ 11 we may affirm the denial of a suppression motion on any ground supported by the record, see, e.g., Soule, 908 F.2d at 1036 n. 7, ___ ____ _____ the legal theories relied on by the government have led to a dearth of record evidence not to mention argumentation to support such an exercise of discretion.8   ____________________ "private party" search of that container); Herzbrun, 723 F.2d at ________ 775 (noting that law enforcement officials obtained search warrant for bag after defendant withdrew from checkpoint, even though their search followed an aborted checkpoint search for _______ weapons which might have uncovered same evidence (i.e., coc- aine)). 8Avil s conceded at the suppression hearing, and the magis- trate judge later found, that the contents of the blocks could not have been "known" from their outward appearance. Thus, given the undisputed evidence that the blocks were completely enclosed in opaque packaging which had to be pierced even for field- _______ testing, the government's unexplicated statement that the cocaine was in Avil s' "plain view" at the checkpoint must be premised on something more illuminating than its rose-colored perception. Nor has the government attempted to argue that the outward appearance of the blocks, or the context in which they were seized, so "clearly announce[d]" the nature of their contents that it was a "virtual certainty" that they contained cocaine. See Arkansas v. Sanders, 442 U.S. 753, 764-65 n.13 (1979); see ___ ________ _______ ___ also Texas, 460 U.S. at 761 (Stevens, J., concurring); United ____ _____ ______ States v. Corral, 970 F.2d 719, 725 (10th Cir. 1992) (contents ______ ______ must be "foregone conclusion"). But see Miller, 769 F.2d at 560- ___ ___ ______ 61 (squarely rejecting prosecution argument that no warrant was needed to search a lawfully-seized plastic bag containing an opaque fiberglass vial filled with cocaine, both of which had been lawfully seized from defendant's suitcase); United States v. _____________ Donnes, 947 F.2d 1430, 1439 (10th Cir. 1991) (adopting Miller ______ ______ approach); accord United States v. Cardona-Rivera, 904 F.2d 1149, ______ _____________ ______________ 1155 (7th Cir. 1990); cf. United States v. Prandy-Binett, 995 ___ _____________ _____________ F.2d 1069 (D.C. Cir. 1993) (upholding seizure of package wrapped _______ in opaque duct tape based on probable cause), cert. denied, 114 _____ ______ S. Ct. 1196 (1994); United States v. Barrios-Moriera, 872 F.2d 12 _____________ _______________ (2d Cir.) (same), cert. denied, 493 U.S. 953 (1989). We think it _____ ______ would be imprudent in the present vacuum either to embrace or reject for the first time a "virtual certainty" exception to the warrant requirement. Nor has the government suggested that the DEA testing should be upheld under the "inventory search" exception to the warrant requirement. Compare, e.g., Colorado v. Bertine, 479 U.S. 367, _______ ____ ________ _______ 371 (1987) (even closed containers may be opened pursuant to 12 The litigation strategy adopted by the government seems especially remarkable considering the portentous district court opinion previously entered in the companion case, United States _________ _____________ v. Figueroa-Cruz, 822 F. Supp. 853 (D.P.R. 1993); see supra note _____________ ___ _____ 2, wherein the government elected not to appeal from an order suppressing virtually identical evidence seized from the person next in line to Pizarro at the security checkpoint.9 In the companion case, the district court suppressed the cocaine Fi- gueroa was carrying in Christmas gift packages inside his _________ ____ ________ luggage because Avil s had permitted the DEA to conduct the initial search at the airport police station without first _______ obtaining a warrant. Avil s testified that he arrested Figueroa based on probable cause to believe that the gift boxes, exposed to view during the security-checkpoint search of his carry-on bag, were so similar to Pizarro's gift box that it was likely that they too contained blocks of cocaine.  The government's attempt to distinguish the two cases misses the mark. The carry-on bags, the gift boxes, and the blocks enclosed in opaque packaging all were discrete closed ___  ____________________ inventory search exception) with United States v. Infante-Ruiz, ____ _____________ ____________ 13 F.3d 498, 504 (1st Cir. 1994) (to justify warrantless search as inventory search, government must introduce evidence of "established procedures and standard criteria" governing invento- ry process). In addition to the government's failure to evince an established inventory procedure or policy, such a rationale is effectively disavowed by Avil s' testimony expressly predicating the DEA searches on the need to field-test the contents of the enclosed blocks for cocaine. 9The government apparently decided to try Figueroa-Cruz separately due to insufficient evidence that the two men were traveling in tandem.  13 containers. Even assuming the warrantless checkpoint searches conducted on the carry-on bags and the gift boxes were lawful, the government nevertheless failed to establish that the subse- quent warrantless DEA penetration of the previously unopened blocks enclosed in opaque packaging came within any recognized exception to the warrant requirement. Consequently, their warrantless search at the police station after any exigency had ceased violated the Fourth amendment. III III CONCLUSION CONCLUSION __________ As the government failed to shoulder its burden, by demonstrating either that its warrantless searches of the opaque packaged blocks were permissible under the Fourth Amendment, or that the admission of the tainted evidence was harmless beyond a reasonable doubt, see United States v. Modarressi, 886 F.2d 6, 8 ___ _____________ __________ (1st Cir. 1989), appellant's conviction must be reversed.  The district court judgment is reversed. The district court judgment is reversed. _______________________________________ 14