298 F.3d 1087
 Hugo TORBET, Plaintiff-Appellant,
v.
UNITED AIRLINES, INC.; Board of Airport Commissioners, City of Los Angeles; Mike Edwards and Does 1 through 50, inclusive, Defendants-Appellees.
 No. 01-55319.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 8, 2002.
 Filed August 7, 2002.
 
 Vincent Chan, Esq., Los Angeles, CA, for the appellant.
 Ashley E. Dempsey and Douglas J. Pahl, Kern & Wooley, LLP, Los Angeles, CA, for appellee United Airlines, Inc.
 Douglas S. Knoll, Esq., Camarillo, CA, for appellees City of Los Angeles Department of Airports and Mike Edwards.
 Appeal from the United States District Court for the Central District of California; A. Howard Matz, District Judge, Presiding.
 Before HUG, FARRIS and SILVERMAN, Circuit Judges.
 OPINION
 FARRIS, Circuit Judge.
 
 
 1
 Hugo Torbet's 42 U.S.C. § 1983 action raises the question of whether the Fourth Amendment permits a random search, at an airport security checkpoint, of a carry-on bag that has passed through an x-ray scan without arousing suspicion that the bag contains weapons or explosives. It does. We affirm the district court's grant of judgment on the pleadings for United Airlines, the City of Los Angeles Department of Airports,[1] and police officer Mike Edwards.
 
 
 2
 * In October 1998, Hugo Torbet entered the United Airlines terminal at Los Angeles International Airport to catch a shuttle flight to San Francisco. At the security checkpoint, he passed through the metal detector and permitted the x-ray scan of his carry-on bag. Security personnel then told Torbet his bag had been selected for a random search.[2] They said they were acting pursuant to a policy of searching bags even without suspicion that a particular bag contained weapons or explosives. Torbet refused to consent. Security personnel summoned police officer Mike Edwards, who explained the random search policy and the fact that he was there to enforce it. Torbet then stated that he wished to simply leave the airport. Edwards advised him that he was not free to leave until after his bag was searched. Edwards instructed security personnel to search the bag. The search revealed nothing of note. Torbet proceeded with his bag to the boarding gate.
 
 
 3
 In August 1999, Torbet sued the defendants alleging violation of 42 U.S.C. § 1983, state law claims for false imprisonment, invasion of privacy, negligence, and constitutional violations. Torbet challenged the policy that bags be subject to random search without reasonable suspicion that the bags contain weapons or explosives. He claimed he suffered loss of dignity and emotional distress when his bag was searched, and sought $1,000,000 in compensatory damages and unspecified punitive damages.
 
 
 4
 In November 2000, the district court considered the defendants' motion for judgment on the pleadings. At the hearing, the district court ordered defendants to produce documents describing the security procedures in effect when Torbet's bag was searched. The defendants were to submit the documents to the court and to Torbet under a protective order. The defendants asked for a modification of the court's order based on a letter from the Federal Aviation Administration stating that the security procedures constituted "sensitive security information," and therefore were not subject to disclosure even under a protective order. The district court modified its order to require defendants to produce the security directives under seal, only for the court's in camera review. Defendants filed three documents under seal: two FAA Security Directives and excerpts from an Air Carrier Standard Security Program. The documents set forth the circumstances and methods for conducting random inspection of bags that have passed through the x-ray machine.
 
 
 5
 In December 2000, the district court granted defendants' motion for judgment on the pleadings. It noted that the security provisions authorized random physical inspections under circumstances not inconsistent with Torbet's situation. The court concluded that the search was constitutional since Torbet impliedly consented to the search by placing his bag on the x-ray belt. The court further concluded that Torbet's state law claims were preempted.
 
 II
 
 6
 We review de novo a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Fajardo v. County of Los Angeles, 179 F.3d 698, 699 (9th Cir.1999). Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. Id.
 
 III
 
 7
 On appeal, Torbet challenges the district court's judgment only as to his section 1983 claim. He argues that random post-x-ray searches are facially invalid, in the absence of express consent, unless the x-ray scan arouses suspicion. We disagree.
 
 
 8
 Airport security screening procedures must comply with the Fourth Amendment. United States v. Davis, 482 F.2d 893, 904 (9th Cir.1973). The procedures must, therefore, be reasonable. Id. at 910. An airport screening search is reasonable if: (1) it is no more extensive or intensive than necessary, in light of current technology, to detect weapons or explosives; (2) it is confined in good faith to that purpose; and (3) passengers may avoid the search by electing not to fly. Id. at 913. To avoid search, a passenger must elect not to fly before placing his bag on the x-ray belt. United States v. Pulido-Baquerizo, 800 F.2d 899, 901-02 (9th Cir. 1986). "[P]assengers placing luggage on an x-ray machine's conveyor belt for airplane travel at a secured boarding area impliedly consent to a visual inspection and limited hand search of their luggage if the x-ray scan is inconclusive in determining whether the luggage contains weapons or other dangerous objects." Id. at 901.
 
 
 9
 We hold that the district court properly granted judgment on the pleadings because Torbet impliedly consented to the random search by placing his bag on the x-ray conveyor belt. See id. We differ with the district court, however, as to the scope of Pulido-Baquerizo. The district court read Pulido-Baquerizo to mean that consent to an x-ray scan implies consent to a further search, regardless of whether the x-ray is "inconclusive" or "flatly devoid of suspicious features." As we read Pulido-Baquerizo, and as we now make explicit, an x-ray scan may be deemed inconclusive, justifying further search, even when it doesn't affirmatively reveal anything suspicious. "[F]irearms and explosives can be small and easily concealed." Id. at 901. Consequently, any x-ray scan that doesn't rule out every possibility of dangerous contents is, of necessity, inconclusive. Given such circumstances, a random post-x-ray search of passengers' bags for weapons or explosives does not violate the Fourth Amendment.
 
 
 10
 Torbet argues that the district court erred in failing to separately address his claim that he was told he could not leave the airport until his bag had been searched. The district court properly, albeit implicitly, granted judgment on the pleadings as to this claim as well. First, Torbet, an attorney, conceded at a hearing before the district court that if the search of his bag was legal, it did not matter that he was told he could not leave.[3] Second, as we observed in Pulido-Baquerizo, the Fourth Amendment does not require that passengers be given a safe exit once detection is threatened. Id. at 902.
 
 
 11
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Torbet erroneously sued and served the City of Los Angeles Department of Airports as "Board of Airport Commissioners, City of Los Angeles."
 
 
 [2]
 The complaint does not specify whether the random search was by hand or by explosive detection device. We will assume a more intrusive manual search
 
 
 [3]
 Torbet appeared pro se before the district court. He has counsel on appeal