**Mary P. MUNOZ**

v.

**FINANCIAL FREEDOM SENIOR FUNDING CORP. et al.**

**Case No. SACV 07–00710–CJC(ANx).**

United States District Court,
C.D. California.

June 2, 2008.

Garrett Wotkyns of Bonnett Fairbourn Friedman and Balint PC in Phoenix and Ingrid M. Evans of Renne Sloan Holtzman Sakai LLP in San Francisco on behalf of Plaintiff.

Thomas M. Hanson, Dykema Gossett, Ann Arbor, MI, on behalf of Defendant Financial Freedom Senior Funding Corporation.

Henry Ben–Zvi of Ben–Zvi and Associates in Santa Monica on behalf of Defendants Carteret Mortgage Corp. and Louis Soqui.

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FINANCIAL FREEDOM'S MOTION FOR JUDGMENT ON THE PLEADINGS** [filed 5/2/08].

CORMAC J. CARNEY, District Judge.

Defendant Financial Freedom Senior Funding Corporation ("Financial Freedom") moves for judgment on the pleadings with respect to the class action complaint of Plaintiff Mary P. Munoz. Ms. Munoz alleges Financial Freedom instituted a complex scheme to defraud senior citizens in the structuring, origination, underwriting, marketing and sale of reverse mortgages. (First Amended Complaint ("FAC") ¶ 1.) Financial Freedom is alleged to have included a number of hidden costs and fees in the reverse mortgage transactions, and also to have paid brokers "kickbacks" for directing borrowers to the com-

pany. (*Id.*) Financial Freedom moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on the grounds that Ms. Munoz's state and common law claims are preempted by federal law. Ms. Munoz opposes Financial Freedom's motion on the ground that her claims are not preempted, explicitly or impliedly, by federal law. For the following reasons, Financial Freedom's motion is GRANTED IN PART AND DENIED IN PART.

## Standard of Review

■■■ A court may grant a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings is substantially identical to a motion to dismiss for failure to state a claim under Rule 12(b)(6); both permit challenges to the legal sufficiency of the opposing party's pleadings. *Qwest Comms. Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D.Cal.2002). The main difference between the two motions is timing; a 12(b)(6) motion is brought before filing an answer, whereas a motion for judgment on the pleadings is brought after the pleadings are closed. Schwarzer, et al., RUTTER GROUP PRACTICE GUIDE: FED. C. PRO. BEFORE TRIAL, § 9:199, at 9–50 (2007). Judgment on the pleadings is appropriate when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *Torbet v. United Airlines, Inc.*, 298 F.3d 1087, 1089 (9th Cir.2002).

## Analysis

■■■ Federal law may preempt state law in three ways, two of which are potentially applicable here:

First, Congress may preempt state law by so stating in express terms. Second, preemption may be inferred when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. In such cases of field preemption, the mere volume and complexity of federal regulations demonstrate an implicitly congressional intent to displace all state law.

*Bank of Am. v. City & County of S.F.*, 309 F.3d 551, 558 (9th Cir.2002) (internal quotation marks and citations omitted).[1] Typically, there is a presumption against federal preemption of state laws. That presumption does not exist, however, "when [a] state regulates in an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). Banking is one such area in which Congress has created a long-standing federal regulatory framework. *See Bank of Am.*, 309 F.3d at 558 (*citing, e.g., M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 325–26, 4 L.Ed. 579 (1819)). For that reason, courts will not apply a presumption against preemption when analyzing federal banking statutes which are "so pervasive as to leave no room for state regulatory control." *Conf. of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir.1979), *aff'd*, 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754; *see Bank of Am.*, 309 F.3d at 559.

---

1. The third ground for preemption, which neither party argues is applicable to this case, is conflict preemption. Under conflict preemption, a state law is preempted when "compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishments and execution of the full purposes and objectives of Congress...." *Bank of Am.*, 309 F.3d at 558.

Under the Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. § 1461 (1933), and associated regulations, Congress authorized broad authority to promulgate regulations governing savings and loan institutions to the Office of Thrift Supervision ("OTS"). *See* 12 U.S.C. § 1464. The regulations authored by OTS pursuant to HOLA include a preemption regulation, 12 C.F.R. § 560.2, which provides as follows:

> *OTS hereby occupies the entire field of lending regulation for federal savings associations.* OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section....

12 C.F.R. § 560.2(a) (emphasis added); *see Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1005 (9th Cir.2008). In the absence of a presumption *against* preemption, and given the strong preemption language contained in the OTS regulations, the Ninth Circuit has held that HOLA preempts all state regulation of savings associations under the doctrine of field preemption. *See Conf. of Fed. Sav. & Loan Ass'ns*, 604 F.2d at 1257, 1260; *see also Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

The OTS regulations also contain the framework for analyzing whether a state law is preempted under HOLA. If the state law in question is of a type listed in paragraph (b) of § 560.2, "the analysis will end there; the law is preempted." OTS, Final Rule, 61 Fed.Reg. 50951, 50966–67 (Sept. 30, 1996). Included in paragraph (b) are two categories relevant to Ms. Munoz's claims. Section 560.2(b)(5) requires preemption of state laws governing "Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and over limit fees." Section 560.2(b)(9) requires preemption of state laws governing "Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents...."

If the law is not one listed in paragraph (b), but nevertheless affects lending, there is a presumption that the law is preempted. *See id.* The presumption can be reversed only if the law falls within one of the exceptions of paragraph (c). Paragraph (c), however, is to be interpreted narrowly; "any doubt should be resolved in favor of preemption." *See id.* Under paragraph (c), certain specified state laws are not preempted to the extent they "only incidentally affect the lending operations of Federal savings associations" or are not otherwise inconsistent with the purposes of the regulation. § 560.2(c). "Contract and commercial law" is one type of state regulation that could fall within the exception of paragraph (c).[2] § 560.2(c)(1).

Here, Ms. Munoz's asserts the following ten claims against Financial Freedom:[3]

---

**2.** Paragraph (c) also contains an exception for a state law which "(i) furthers a vital state interest; and (ii) either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section." § 560.2(c)(6).

This exception only applies if OTS finds such an exception based on their review. *See id.*

**3.** Financial Freedom is a subsidiary of Indymac Bank, FSB (*see* Financial Freedom Request for Judicial Notice, Exs. 2, 3) and, ac-

(1) Elder Abuse by "manipulat[ing] Plaintiff and the Class into purchasing reverse mortgages and into paying excessive, unlawful and unfair fees and costs in connection with reverse mortgages." (FAC ¶ 93.)

(2) Unlawful, Deceptive and Unfair Business Practices by (a) failing to identify a "service release premium" required by the Real Estate Settlement Procedures Act ("RESPA") and Regulation X; (b) paying a service release premium, or "kickback" to brokers; (c) charging a loan origination fee when Plaintiff did not independently engage the broker; (d) violating the Consumer Legal Remedies Act ("CLRA") by failing to disclose "fees, commissions, penalties, taxes" and other costs associated with the reverse mortgage; (e) violating the California Insurance Code by failing to conduct themselves honestly with a person over age 65 and by issuing false or misleading advertising; (f) violating the California Civil Code by failing to disclose material facts about the reverse mortgage transaction, breaching fiduciary duties, aiding and abetting breaches of fiduciary duties, and by breach the duty of good faith and fair dealings; and, (g) fraudulent business practices. (*Id.* at ¶¶ 101–10.)

(3) Unfair, Deceptive and Misleading Advertising by failing to disclose the risks, expenses and fees associated with reverse mortgages in certain advertising. (*Id.* at ¶¶ 111–25.)

(4) Breach of Fiduciary Duty by selling unsuitable reverse mortgages, charging excessive or unnecessary fees, failing to disclose facts, features or risks of reverse mortgages and failing to train and monitor sales staff. (*Id.* at ¶¶ 126–33.)

(5) Aiding and Abetting Breach of Fiduciary Duty. (*Id.* at ¶¶ 134–37.)

(6) Fraudulent Concealment by failing to disclose all material facts and risks of reverse mortgages, the fees and costs associated with reverse mortgages, and the relationship between all of the Defendants. (*Id.* at ¶¶ 138–48.)

(7) Unjust Enrichment and Imposition of Constructive Trust for wrongfully obtaining commissions, charges and other fees "based upon" misleading sales presentations and marketing materials. (*Id.* at ¶¶ 149–52.)

(8) Violation of the CLRA by selling financial planning services that included deceptive and fraudulent disclosures, failing to disclose the relationship among Defendants, misrepresenting the benefits of reverse mortgages, and failing to disclose penalties, fees, and charges. (*Id.* at ¶¶ 153–74.)

(9) Breach of the Implied Covenant of Good Faith and Fair Dealing by failing to disclose the risks associated with a reverse mortgage, failing to disclose applicable fees and costs, and failing to properly train employees. (*Id.* at ¶¶ 175–81.)

(10) Negligent Misrepresentation by failing to advise Plaintiffs of the risks of reverse mortgages and failing to disclose charges and fees. (*Id.* at ¶¶ 182–86.)

Given Ms. Munoz's claims as described above, the Court must determine whether

cording to Financial Freedom, it is therefore subject to the requirements of HOLA. Plaintiffs do not dispute this contention.

any or all of these claims are preempted by HOLA. Financial Freedom argues that all of Ms. Munoz's claims concentrate on the fees and costs associated with reverse mortgages and the advertising and disclosures related to the transaction. As such, her claims are preempted by HOLA. Ms. Munoz, however, presents two arguments in rebuttal. First, she contends that laws of general applicability like CLRA and California's unfair competition law are not preempted by HOLA. Second, she argues that the "focus of her case against Financial Freedom going forward" is a violation of 24 C.F.R. § 206.31(a)(1), a federal regulation barring undisclosed kickbacks between lenders and brokers. As a federal regulation, it is not preempted by HOLA.

In support of her argument that state laws of general applicability are not preempted by HOLA, Ms. Munoz cites a number of California state court decisions.[4] *See, e.g., McKell v. Wash. Mut., Inc.,* 142 Cal.App.4th 1457, 1482, 49 Cal.Rptr.3d 227 (Cal.Ct.App.2006); *Gibson v. World Savings & Loan Ass'n,* 103 Cal.App.4th 1291, 1298, 128 Cal.Rptr.2d 19 (Cal.Ct.App. 2002); *Fenning v. Glenfed,* 40 Cal.App.4th 1285, 1298, 47 Cal.Rptr.2d 715 (Cal.Ct.App. 1995). For example, in *McKell v. Washington Mutual, Inc.,* the California Court of Appeals considered whether HOLA preempted claims under, *inter alia,* California's unfair competition law ("UCL"), RESPA, Regulation X, CLRA, and HUD Settlement procedures, as well as a claim

for unjust enrichment. 142 Cal.App.4th at 1467, 49 Cal.Rptr.3d 227. In concluding that the plaintiff's claims were not preempted by HOLA, the *McKell* court noted that the duties imposed by the UCL are not "lending regulations" and do not seek to govern the manner in which savings associations operate. *Id.* at 1487, 49 Cal.Rptr.3d 227. Instead, applying the UCL to the Bank "simply insists that the Bank cannot misrepresent how it operates, or employ fraudulent methods in its operations." *Id.* As such, it is a general proscription against unfair business practices, not a specific regulation of a savings association, and is not preempted by HOLA. *See id.; see also Gibson,* 103 Cal.App.4th at 1303, 128 Cal.Rptr.2d 19.

The Ninth Circuit considered a similar issue in *Silvas v. E*Trade Mortgage Co.,* 514 F.3d at 1006. There, the plaintiff brought claims under the UCL expressly predicated on violations of the Truth in Lending Act ("TILA") for the mortgage lender's alleged misrepresentation of rescission rights and for failing to refund a deposit. To determine whether the plaintiff's UCL claims were preempted by HOLA, the court applied the preemption analysis set forth by the OTS in § 560.2(c). *Id.* Accordingly, the Court considered whether the UCL, "*as applied,* is a type of state law contemplated in the list under paragraph (b) of [§ 560.2]." *Id.* (emphasis added). In contrast to the *McKell* court, the Ninth Circuit analyzed the UCL based

---

4. Ms. Munoz also cites a number of cases, including one federal case, construing whether the National Bank Act ("NBA") preempts certain state laws of general applicability. While such cases may be analogous, they lack persuasive value because they are based on a different piece of federal legislation that was implemented by a different federal agency, the Comptroller of the Currency. HOLA and the OTS regulations must be analyzed on their own merits. In fact, the lone federal case Ms. Munoz cites in support of her position

tion *T.C. Jefferson v. Chase Home Finance,* No.C06–6510TEH, 2008 WL 1883484, at *11 (N.D.Cal. April 29, 2008), recognized that HOLA preemption is distinguishable from NBA preemption because the OTS occupies the entire field of lending regulation for federal savings associations which therefore "has arguably broader preemptive effect." The NBA, on the other hand, is structured in such a way as to only implicate conflict preemption.

on the substance of the underlying violation giving rise to the UCL claim. Because the plaintiff's claims regarding fees and disclosures fit within those laws specifically preempted by HOLA, §§ 520.6(b)(5) and (9) respectively, the Court concluded the claim was preempted and no further analysis was necessary. *See id.* The Ninth Circuit drew no distinction between a law of general applicability and one specifically designed to regulate savings associations. Thus, state court decisions cited by Ms. Munoz, to the extent that they hold a law of general applicability cannot be preempted by HOLA, are in conflict with this recent decision of the Ninth Circuit.

■ In light of *Silvas,* the fundamental inquiry here becomes whether the UCL "as applied" is a type of state law that is preempted under HOLA. Ms. Munoz raises a number of claims related to the fees, commissions, penalties and costs associated with the reverse mortgage transaction. (*See, e.g.,* FAC ¶¶ 102(c)(2); 108.[5]) Regulation of the reverse mortgage fees falls squarely within § 560.2(b)(5) which preempts state laws governing "[l]oan-related fees, including without limitation initial charges, late charges, prepayment penalties, servicing fees, and over limit fees." 12 C.F.R. § 560.2(b)(5). To the extent Ms. Munoz seeks to apply the UCL to "loan-related fees," her claims are preempted by HOLA. *See Silvas,* 514 F.3d at 1006.

■ Ms. Munoz also raised claims related to disclosure of the above described fees as well as advertisements made by Financial Freedom. (*See, e.g.,* FAC ¶¶ 102(c)(1); 112–15; 155; 166–69.) Applying the UCL to these claims, too, falls squarely within an area expressly preempted by HOLA, particularly "disclo-

sure and advertising, including laws requiring specific statements, information and other contents to be included in credit application forms, ... credit contracts, and other credit-related documents." 12 C.F.R. § 560.2(b)(9). For that reason, all of Ms. Munoz's claims which attempt to hold Financial Freedom liable for advertising and disclosure of fees or other aspects of the transaction under the UCL are preempted by HOLA and must be dismissed.

■ Ms. Munoz argues that her claims under the Real Estate Settlement Procedures Act ("RESPA") are not preempted by HOLA. (Opp'n 6.) She contends that RESPA implicates only express preemption and it is therefore unaffected by HOLA's field preemption. The Court disagrees. In *Bank of America v. City and County of San Francisco,* 309 F.3d at 565, the Ninth Circuit considered whether a state ordinance not expressly preempted under the Electronic Funds Transfer Act ("EFTA") was nonetheless preempted by HOLA. The Court first analyzed the anti-preemption provision of the EFTA which provided:

> This subchapter does not annul, alter, or affect the laws of any State relating to electronic fund transfers, except to the extent that those laws are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency. A State law is not inconsistent *with this subchapter* if the protection such law affords any consumer is greater than the protection afforded *by this subchapter.*

*Id.* (*citing* 15 U.S.C. § 1693q) (emphasis in *Bank of Am.*) The *Bank of America* court rejected the defendants' argument that the anti-preemption clause saved the ordi-

---

**5.** Citations to particular paragraphs in Ms. Munoz's complaint are for illustrative purposes only. In no way do such citations limit or in any way delineate which claims are preempted under HOLA.

nance from HOLA preemption because the "reference to 'this subchapter' indicates that the EFTA's anti-preemption provision does not apply to other statutes." *Id.*

The Ninth Circuit applied the same reasoning to TILA's anti-preemption clause in *Silvas*. The *Silvas* court found that TILA's preemption language was nearly identical to the EFTA: it preempted state law only to the extent it was inconsistent with TILA.[6] 514 F.3d at 1007 (*citing* 15 U.S.C. 1610(b)). The *Silvas* court held that TILA's anti-preemption provision, which included a reference to "this subchapter," did not foreclose preemption under other federal statutes pursuant to the court's earlier decision in *Bank of America. See id.* As the substance of the TILA claim was an area within the field regulated by HOLA, the Court concluded that the plaintiff's claim was preempted by HOLA, even though it was not preempted by TILA.

■ Here, the anti-preemption clause in RESPA has little meaningful difference from the anti-preemption clause in TILA at issue in *Silvas*. The anti-preemption clause of RESPA provides:

This chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, *except to the extent that those laws are inconsistent with any provision of this chapter, and then only the extent of the inconsistency.*

12 U.S.C. § 2616 (emphasis added). Thus, under *Bank of America* and *Silvas*, the anti-preemption clause of RESPA does not

foreclose preemption under HOLA. State laws that are not inconsistent with RESPA are not preempted by RESPA, but they may nonetheless be preempted by HOLA to the extent that they enter the field of savings and loan regulation which is entirely occupied by HOLA's federal regulatory scheme. For that reason, to the extent that Ms. Munoz's claims which rely on RESPA and its implementing regulations challenge fees charged by Financial Freedom or disclosures made by Financial Freedom, they are preempted under HOLA. *See Silvas*, 514 F.3d at 1007; *Bank of Am.*, 309 F.3d at 565.

■ Ms. Munoz also argues that her claims under 24 C.F.R. § 206.31(a)(1) are not preempted by HOLA. She alleges that Defendants violated this regulation by "charging Ms. Munoz an origination fee to Cateret, a mortgage broker, when the loan originator was actually Financial Freedom, notwithstanding that Mrs. Munoz did not independently engage Cateret and/or there is a financial interest between Cateret and Financial Freedom...." (FAC ¶ 102(d)(1).) Paragraph 39 of the first amended complaint seems to offer clarity on the substance of this claim. In paragraph 39, Ms. Munoz alleges, on information and belief, that "Financial Freedom failed to identify or did not adequately identify on the Good Faith Estimate and/or HUD–1 Settlement Statement that the mortgage brokers such as Cateret were receiving compensation in the form of a "service release premium" from Financial Freedom. (FAC ¶ 39.) Thus, it may be inferred that Ms. Munoz's § 206.31(a)(1) claims challenge the origina-

---

**6.** TILA's anti-preemption provision is as follows: "Except as provided in subsection (e) of this section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, *except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency."* § 1610(a)(1) (emphasis added).

tion fee Financial Freedom paid to Cateret, and the lack of disclosure of that fee to the borrowers. Similar to her UCL claims analyzed above, HOLA preempts these claims because they relate to "disclosure and advertising," *see* § 560.2(b)(9), and "loan-related fees," *see* § 560.2(b)(5). That the claims are founded in a federal regulation does not alter this analysis. *Cf. de la Cuesta,* 458 U.S. at 153–54, 102 S.Ct. 3014.

Financial Freedom's motion, however, cannot be granted in its entirety because it is unclear whether Ms. Munoz has any claims against Financial Freedom that do not rely on "loan-related fees" or "advertising and disclosures." To the extent any claims, once amended, can stand on their own in the absence of fee and disclosure-related allegations, those claims are not preempted by HOLA. For that reason, Ms. Munoz is granted leave to amend her complaint consistent with this order.

### Conclusion

For the foregoing reasons, Financial Freedom's motion for judgment on the pleadings is GRANTED IN PART with respect to all claims alleged by Ms. Munoz which are preempted by HOLA and DENIED IN PART with respect to all other claims. Ms. Munoz has twenty days leave to amend its complaint consistent with this order. Financial Freedom has twenty days thereafter to file a responsive pleading.